RHONDA G. MILLS,

      Plaintiff,

v.

**CASE NO.: 1:12-cv-10937-JLT**

U.S. BANK NATIONAL ASSOCIATION AS
TRUSTEE FOR THE LEHMAN XS TRUST,
MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 2007-4N, *et al.*,

      Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

### PRELIMINARY STATEMENT

The premise on which Rhonda G. Mills ("**Plaintiff**") supports her *twenty-three* count Amended Complaint—that defendant OneWest Bank, FSB ("**OneWest**") did *not* have a statutory "power of sale" to foreclose on her property—is wrong as a matter of law and fact. Based on her own admissions, OneWest and defendant U.S. Bank National Association ("**U.S. Bank**") unquestionably complied with Massachusetts law when obtaining and exercising that power of sale, which Plaintiff expressly conveyed in her mortgage. Furthermore, this Court already has soundly rejected Plaintiff's various challenges to the process of registering and tracking securitized mortgage loans through defendant Mortgage Electronic Registration Systems, Inc. ("**MERS**") in *Culhane v. Aurora Loan Services of Nebraska*, 826 F. Supp. 2d 352 (D. Mass. 2011) (Young, J.). So too have other courts in Massachusetts.

Despite Plaintiff's protestations, under Massachusetts common law, a promissory note and mortgage may be "split" and held by separate entities without voiding the underlying debt

obligation or making the mortgage unenforceable. By operation of law, when MERS is named as a "nominee" in a mortgage, MERS holds "legal title" to that mortgage in trust for the note holder (in this case, U.S. Bank) who retains an "equitable interest" in the instrument. Upon a borrower's default in performance of the underlying promissory note, all a note holder need do is "reunite" the "legal title" in the mortgage with the note *prior* to foreclosure. Concomitantly, that "reunion" need only be through a *single* assignment from MERS to the note holder or its servicing agent (in this case, OneWest). A foreclosing entity need not show a complete "chain of assignments" as Plaintiff contends. Indeed, if Plaintiff's views of MERS were correct, they would undermine the majority of residential mortgages in Massachusetts, which would spin the industry and credit market into irreparable and utter chaos. This cannot occur.

Although OneWest and U.S. Bank appreciate that Plaintiff wants to reside in her property, she failed to pay for it. As such, this Court should not be swayed by the conclusory rhetoric and needless recriminations contained in her Amended Complaint. Plaintiff defaulted in performance of her promissory note, which she secured with her property. After default, U.S. Bank then exercised its right as a secured party to foreclose on and ultimately purchase the underlying property—based on the mortgage that Plaintiff granted when she borrowed money to purchase that property. This case is about nothing more or less, and Plaintiff fails to state any cognizable claims against OneWest and U.S. Bank. Consequently, this Court should dismiss all claims in the Amended Complaint in their entirety and with prejudice.

<u>STATEMENT OF RELEVANT FACTS</u>

**A.      The Mills Loan and Closing.**

1.      On October 6, 2006, Plaintiff signed an "Adjustable Rate Note (MTA – Twelve Month Average Index – Payment Caps)" in the amount of $376,000.00 ("**Mills Note**") and a

"Mortgage" ("**Mills Mortgage**") (together with Mills Note, "**Mills Loan**") to purchase a residential home in Mashpee, Massachusetts ("**Mills Residence**").[1] The Mills Note identified the "Lender" as MortgageIT, Inc. ("**MortgageIT**") and upon signing Plaintiff agreed she understood that (1) the Lender "**may transfer this Note**" and (2) the Lender "**or anyone who takes this Note by transfer** and who is entitled to receive payments under this Note is called the 'Note Holder'."[2]

2.      The Mills Mortgage contains the following definition, among others:

"MERS" is Mortgage Electronic Registration Systems, Inc. **MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.[3]

Also, the Mills Mortgage contains the following clause entitled "TRANSFER OF RIGHTS IN THE PROPERTY":

This Security Instrument secures to Lender: (1) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. **For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale** . . . .[4]

Furthermore, the Mills Mortgage discloses that the "Note or a partial interest in the Note (together with this Security Instrument) **can be sold one or more times without prior notice to**

---

[1] *See* Am. Compl. ¶¶ 7, 10, 12; Exhibit 3 thereto (a copy of the Mills Note); Exhibit 4 thereto (a copy of the Mills Mortgage).

[2] *See* Am. Compl. ¶ 19; Exhibit 3 thereto, p. 1, ¶ 1 (emphasis added). The first page of the Mills Note contains a telephone number for Mortgage Electronic Registration System ("**MERS**") ("MERS Phone: 1-888-679-6377") and a MERS mortgage identification number ("**MIN**") ("MIN: 100112065729375598"). *See* Am. Compl., Exhibit 3 thereto, p. 1.

[3] *See* Am. Compl., Exhibit 4 thereto, p. 1 (emphasis added). The Mills Mortgage also contains the telephone number for MERS and the MERS MIN on the first page, and so too do the "Prepayment Rider" and "Adjustable Rate Rider" attached to the Mills Mortgage. *See id.*.

[4] *See* Am. Compl. ¶ 23; Exhibit 4 thereto, p. 3 (emphasis added).

Borrower."[5]   Finally, the Mills Mortgage contains the following disclosure regarding the

"STATUTORY POWER OF SALE":

> If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower . . . . and the Property shall be sold in the manner prescribed by Applicable Law.  **Lender or its designee may purchase the Property at any sale.**[6]

The Mortgage is governed by federal law and Massachusetts law.[7]

**B.      MortgageIT's Sale of the Mills Loan in the Secondary Market; Registration of the Mills Mortgage with MERS; Securitization of the Mills Loan.**

3.      After the closing, MortgageIT sold the Mills Loan in the secondary mortgage market.[8]  On October 17, 2006, MortgageIT "registered" the Mills Mortgage with MERS,[9] as contemplated in the Mills Mortgage.[10]  On March 1, 2007, the Mills Loan was transferred with other mortgage loans to a securitized trust, for which U.S. Bank was appointed as trustee ("**Trust**").[11]  Among other things, the Trust contains a "Mortgage Loan Schedule" to identify the mortgage loans that were transferred to the Trust as of March 1, 2007.[12]  The Mills Loan (loan

---

[5] *See* Am. Compl. ¶ 46; Exhibit 4 thereto, p. 11, ¶ 20 (emphasis added).

[6] *See* Am. Compl., Exhibit 4, p. 13, ¶ 22 (emphasis added).

[7] *See id.* p. 11, ¶ 16.

[8] *See* Am. Compl. ¶ 50.  MortgageIT endorsed the Mills Note in blank.  *See* Am. Compl., Exhibit 3 thereto, p. 5.

[9] Basically, MERS, through an electronic database, tracks the rights to residential mortgage loans sold in the secondary market.  *See* Am. Compl. ¶ 28.  When a mortgage is registered with MERS, purchasers of the associated loan do not have to re-record mortgage assignments each time the loan is transferred to another investor.  That, of course, helps the industry prevent complicated chains of title for loans that are in the secondary market.

[10] *See* Am. Compl., Exhibit 4, p. 1; Exhibit A hereto (a copy of MERS's "MIN SUMMARY" that tracks the travel of the Mills Loan through the MERS system and the secondary market).  A court may consider matters that are in the public record when ruling on a motion to dismiss.  *See In re Colonial Mortg. Bankers Corp. v. Lopez-Stubbe*, 324 F.3d 12, 15–16 (1st Cir. 2003).

[11] *See* Am. Compl. ¶¶ 50–51; Exhibit 11 thereto; Exhibit B hereto (a copy of the Trust Agreement, dated March 1, 2007).  Plaintiff only attached certain pages of the Trust Agreement to the Amended Complaint.  For completeness, OneWest and U.S. Bank attached the entire Trust Agreement.

[12] *See* Exhibit C hereto (a copy of the Mortgage Loan Schedule).  In deciding a motion to dismiss, a court may take into account exhibits attached to a complaint or other documents or matters referenced in a complaint.  *See Rederford v. US Airways, Inc.*, 589 F.3d 30, 35 (1st Cir. 2009).

4

number 3002302531) is identified clearly on the Mortgage Loan Schedule.[13]  As of March 29, 2009, OneWest became the servicer of the mortgage loans in the Trust, including the Mills Loan.[14]  Plaintiff, however, is not and has never been a party to the Trust.[15]

**C.  MERS's Assignment of the Mills Mortgage to OneWest; Foreclosure Proceedings and Foreclosure Sale of the Mills Residence to U.S. Bank.**

4.  On April 23, 2009, MERS, as record mortgagee and nominee for MortgageIT (and its successors and assigns), executed an "Assignment of Mortgage" ("**MERS Assignment**").[16]  The MERS Assignment transferred legal title to the Mills Mortgage to OneWest.[17]  Erica A. Johnson-Seck, a duly appointed MERS vice president, executed the MERS Assignment in front of a Notary Public.[18]  As Plaintiff had defaulted in performance of the Mills Note, on May 15, 2009, OneWest filed a complaint in Barnstable Superior Court under the Servicemembers Relief Act ("**Servicemembers Act**").[19]  On May 18, 2009, the Barnstable Superior Court issued an Order of Notice by Publication to Plaintiff under the Servicemembers Act.[20]  After confirming that Plaintiff was not entitled to benefits under the Servicemembers Act, OneWest noticed a foreclosure sale on the Mills Residence by public auction for January 21,

---

[13] *See* Exhibit C hereto.

[14] *See* Am. Compl. ¶ 3; Exhibit A hereto.

[15] *See* Exhibit B hereto.

[16] *See* Am. Compl. ¶ 60; Exhibit 13 thereto (a copy of the MERS Assignment).

[17] *See* Am. Compl., Exhibit 13 thereto.  Contrary to the assertions in Amended Complaint, the "operative clause" of the MERS Assignment does not purport to assign "said Mortgage and the Note and claim secured thereby"; but rather, the operative language provides that MERS "hereby grants, assigns and transfers to [OneWest] . . . [a]ll of the right, title, and interest that Assignor has as current holder of [the Mills Mortgage]" together "with the Note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Mortgage."  *Compare* Am. Compl. ¶ 63 *with* Exhibit 13 attached thereto.

[18] *See* Am. Compl., Exhibit 13 thereto.  On March 19, 2009, pursuant to a Corporate Resolution, MERS appointed Ms. Johnson-Seck as assistant secretary and vice president of MERS.  *See* Exhibit D hereto (a copy of the Corporate Resolution).

[19] *See* Exhibit E hereto (a copy of the complaint).

[20] *See* Exhibit F hereto (a copy of the order of notice).

2011.[21]  As Plaintiff did not file an action and obtain an order to enjoin that public auction, on

January 21, 2011, OneWest sold the Mills Residence to U.S. Bank.[22]

**D.    The Plaintiff's Complaint.**

5.     On May 23, 2012, after OneWest Bank filed a summary process action to evict

Plaintiff from the Mills Residence, Plaintiff filed a Complaint in Barnstable Superior Court,

which OneWest and U.S. Bank removed to this Court on May 30, 2012.   On June 29, 2012,

Plaintiff filed her Amended Complaint, which, among other things, added MERS as a defendant.

In the Amended Complaint, Plaintiff asserts twenty-three causes of action as follows:

A.    Count 1 – Failure to Comply with M.G.L. c. 183, § 21.

B.    Counts 2 and 3 – Breach of the Mortgage Contract and Breach of the Covenant of Good Faith and Fair Dealing, respectively.

C.    Count 4 – Unfair and Deceptive Acts and Practices.

D.    Count 5 – Failure of Conditions Precedent.

E.    Counts 6, 7, and 8 – Fraudulent Misrepresentation at Common Law, Statutory Fraud, and Negligent Misrepresentation, respectively.

F.    Count 9 – Collusion and Civil Conspiracy.

G.    Count 10 – Infliction of Emotional Distress.

H.    Count 11 – Conversion.

I.     Count 12 – Unfair Debt Collection Practices.

J.     Count 13 – Massachusetts Civil Right Act.

K.    Counts 14–17 – Unclean Hands, Damage to Reputation, Bad Faith, and Estoppel, respectively.

L.    Count 18 – Fraud upon the Court, Abuse of Process.

M.    Count 19 – Slander of Title.

M.    Counts 20–22 – Declaratory Relief.

N.    Counts 23 – Injunctive Relief.[23]

---

[21] *See* Am. Compl. ¶ 74; Exhibit G hereto (a copy of the public notice).

[22] *See* Am. Compl. ¶ 74; Exhibit 14 thereto (a copy of the foreclosure deed).

[23] *See generally* Am. Compl.

Plaintiff bases most of these causes of action, in whole or in part, on the premise that OneWest did not have the "power of sale" (and, as such, could not foreclose) because OneWest allegedly did not hold an interest in the Mills Note and Mills Mortgage when OneWest foreclosed on the Mills Residence.[24]

<h2 style="text-align:center"><b>RELEVANT PLEADING STANDARDS</b></h2>

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must proffer enough facts to establish a plausible claim for relief.[25] Although a court must accept all well-pled factual allegations as true when analyzing a motion to dismiss, that acceptance does not apply to legal conclusions.[26] Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[27] Accordingly, a court should dismiss a complaint where the well-pled facts fail to warrant an inference of any more than "the mere possibility of misconduct."[28] This is particularly true in mortgage-related cases where the documents a plaintiff attaches to the complaint directly contradict the plaintiff's theories of recovery.[29]

---

[24] *See* Am. Compl. p. 2 (where Plaintiff explains that "her assertion is simply that the Defendants did not hold either interest [in the note or mortgage] when they exercised the statutory power of sale"); *see also* Am. Compl. ¶¶ 77–85 (Count 1); ¶ 88 (Count 2); ¶ 92 (Count 3); ¶ 95 (Count 4); ¶ 98 (Count 5); ¶ 101 (Count 6); ¶ 104 (Count 7); ¶ 108 (Count 8); ¶¶ 110–114 (Count 9); ¶ 116 (Count 10); ¶ 118 (Count 11); ¶ 121 (Count 12); ¶¶ 123–124 (Count 13); ¶ 127 (Count 14); ¶ 129 (Count 15); ¶ 135 (Count 17); ¶ 137 (Count 18); ¶ 139 (Count 19); ¶¶ 140–142 (Counts 20–22); ¶¶ 144–145 (Count 23).

[25] *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557–58 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[26] *See Iqbal*, 556 U.S. at 678.

[27] *See id.*

[28] *See id.* at 679; *see also SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (explaining that complaints that do not establish more than a mere conjectural possibility of liability are subject to dismissal).

[29] *See Kiah v. Aurora Loan Servs., LLC.*, Civ. No. 10-40161-FDS, 2011 WL 841282, at *1 (D. Mass. Mar. 4, 2011) (Saylor, J.).

<u>ARGUMENT</u>

I.    **PLAINTIFF FAILS TO STATE ANY CLAIMS FOR RELIEF ARISING OUT OF THE FORECLOSURE OF THE MILLS RESIDENCE.**

   A.    **OneWest Properly Had and Exercised the Statutory "Power Of Sale" to Foreclose on the Mills Residence.**

In *Culhane v. Aurora Loan Services of Nebraska*, this Court issued a thoughtful opinion that describes how an entity could *lawfully* obtain the statutory power of sale to foreclose on property under Massachusetts law.[30]  *Culhane* and its legal principles bar Plaintiff's main premise that OneWest did not have the power of sale when it foreclosed on the Mills Residence. Pertinent facts from *Culhane* that are relevant here are:

   1.    On April 4, 2006, plaintiff Oratai Culhane ("**Culhane**") executed a promissory note to Preferred Financial Group ("**Preferred**").[31]  As security for that note, Culhane also executed a mortgage to MERS, as Preferred's nominee.[32]  Culhane's mortgage contained express language conveying the statutory power of sale.[33]

   2.    Culhane's promissory note was pooled with other notes in a securitized trust, of which Deutsche Bank Trust Company Americas ("**Deutsche**") acted as trustee for Residential Accredit Loans, Inc, Mortgage Asset-Backed Pass-Through Certificates, Series 2006-QO5 ("**RALI Series 2006-QO5**").[34]  As such, Deutsche, as trustee of RALI Series 2006-QO5, held Culhane's promissory note, as evidenced by the "Mortgage Loan Schedule" for the trust.[35]

   3.    As of April 1, 2008, defendant Aurora Loan Services, LLC ("**Aurora**") became the servicer for the loans held by the RALI Series 2006-QO5, including Culhane's loan.[36]

   4.    After Culhane defaulted in performance of the promissory note, on April 7, 2009, Culhane's mortgage was assigned by MERS to Aurora.[37]  The

---

[30] *See* 826 F. Supp. 2d 352 (D. Mass. 2011) (Young, J.).

[31] *See id.* at 357.

[32] *See id.*

[33] *See id.* at 378 (Culhane's mortgage instrument is that of a standard MERS mortgage contract).

[34] *See id.* at 357.

[35] *See id.* at 358.

[36] *See id.*

[37] *See id.* at 357–58.

assignment was executed before a notary public by JoAnn Rein, who was employed by Aurora but had been duly appointed as a vice president of MERS at the time of the assignment pursuant to a MERS Corporate Resolution.[38]

5.　　On October 21, 2009, the Massachusetts Land Court confirmed that Culhane was not entitled to the benefit of the Servicemembers Act.[39]

6.　　After various postponements and re-notices of the foreclosure sale, and after the sale became imminent, Culhane brought the action in Massachusetts Superior Court against Aurora to prevent foreclosure on the property, which action Aurora removed to this Court.[40]

The main issues presented to this Court in *Culhane* by these facts were whether the original mortgagee properly assigned Culhane's mortgage to Aurora and whether Aurora had standing to foreclose on the mortgaged property under the statutory power of sale contained in Massachusetts General Laws Chapter 183, Section 21.[41]

After *extensively* reviewing Massachusetts common law, as well as the MERS system of mortgage registration, mortgage loan securitization, appointing "certifying officers," and assigning mortgages, this Court concluded that a foreclosing entity, like Aurora, may properly exercise the statutory power of sale (after the mortgagor defaults in performance of the underlying note) if (1) the statutory power of sale is "granted in or incorporated by reference in" the mortgage; (2) the foreclosing entity confirms (through a limited court proceeding) that the mortgagor is not a beneficiary of the Servicemembers Act and provides sufficient notice of the foreclosure sale; and (3) the foreclosing entity, at the time of the foreclosure notice and sale, (i)

---

[38] *See id.* at 357.

[39] *See id.* at 358.

[40] *See id.* at 356, 358–59.

[41] *See id.* at 356.

possesses "legal title" to the mortgage and (ii) *either* has the underlying promissory note *or* is the servicer of the mortgage loan.[42]

Just like the facts presented to this Court in *Culhane*, all of the prerequisites to foreclosure were met by OneWest and U.S. Bank. Specifically, as detailed above:

1. On October 6, 2006, Plaintiff executed the Mills Note to MortgageIT and, as security for that promise to pay, Plaintiff also executed the Mills Mortgage to MERS, as MortgageIT's (and its successors' and assigns') nominee.[43] The Mills Mortgage contains express language conveying the statutory power of sale to MERS, as nominee.[44]

2. The Mills Loan was transferred with other mortgage loans into a securitized trust, of which U.S. Bank acted as trustee.[45]

3. As of March 29, 2009, OneWest became the servicer for the loans held by the Trust.[46]

4. On April 23, 2009, after Plaintiff defaulted[47] in performance of the Mills Note, MERS assigned the Mills Mortgage to OneWest.[48] A duly authorized MERS vice president executed the assignment in front of a notary public.[49]

---

[42] *See Culhane*, 826 F. Supp. 2d at 359–78; *see also Bower v. Mortg. Elec. Registration Sys., Inc.*, 462 B.R. 347, 353–54 (Bankr. D. Mass. 2012) (Hillman, J.) (reviewing *Culhane*); *Aliberti v. GMAC Mortg., LLC*, 779 F. Supp. 2d 242, 249 (D. Mass. 2011) (Gorton, J.); *U.S. Bank Nat'l Ass'n v. Ibanez*, 458 Mass. 637, 646, 941 N.E.2d 40, 49 (2011) (recognizing that Chapter 183, Section 21 requires the statutory power of sale to be "granted by" the mortgage instrument itself). Notably, the foreclosing entity does *not* have to hold the note to foreclose. *See Valerio v. U.S. Bank, N.A.*, 716 F. Supp. 2d 124, 128 (D. Mass. 2010) (Gorton, J.) (explaining that Chapter 244, Section 14 "is addressed to mortgagees, not note holders"); *see also In re Lopez*, 446 B.R. 12, 18–19 (Bankr. D. Mass. 2011) (while MERS never actually holds notes, it may transfer mortgages on behalf of the note holder as a result of its "nominee" status). Plaintiff's contrary arguments are incorrect. *See* Am. Compl. ¶¶ 79–85.

[43] *See supra* Statement of Relevant Facts ("**SOF**") Nos. 1, 2.

[44] *See* SOF No. 2.

[45] *See* SOF No. 3.

[46] *See id.*

[47] Plaintiff makes a conclusory allegation that OneWest somehow caused her default under the Mills Note by either not abiding by a loan modification granted by *IndyMac* or not providing Plaintiff with another loan modification. *See* Am. Compl. ¶ 78. That allegation is not adorned by any facts and, as such, is insufficiently pleaded. In addition, Plaintiff admits that she does not even want the alleged modification offered by IndyMac in 2008; but rather, she wants a *better* loan modification from OneWest. *See* Am. Compl. ¶ 16. Furthermore, unless a mortgagor files an action and obtains a court order enjoining foreclosure, the sale goes forward "[e]ven where there is a dispute as to whether the mortgagor was in default or whether or the party claiming to be the mortgage holder is the true mortgage holder." *See Ibanez*, 458 Mass. at 646, 941 N.E.2d at 49. Plaintiff chose not to file such an action prior to the foreclosure sale.

[48] *See* SOF No. 4.

[49] *See id.*

5.    OneWest confirmed that Plaintiff was not a beneficiary of the Servicesmembers Act, provided notice of a foreclosure sale, and foreclosed on the Mills Residence.[50]

6.    At all relevant times, the foreclosing entity (OneWest) possessed legal title to the Mills Mortgage (through the MERS Assignment) and was the servicing agent of the Mills Loan on behalf of U.S. Bank, the holder of the Mills Note.[51]

Consequently, OneWest properly had and executed the statutory power of sale to foreclose on the Mills Residence. Accordingly, this Court should dismiss Plaintiff's causes of action based on the erroneous premise that OneWest did *not* have that power (i.e., Counts 1–15 and 17–23).[52]

**B.    Plaintiff Will Not Find Any Safe Harbors in Her Other Arguments.**

Plaintiff makes other sundry arguments in the Amended Complaint to continue to forestall the inevitable.[53] Despite their breadth, these other arguments should not give this Court any pause. All of these arguments have either been rejected by this Court or other courts, or are otherwise contrary to Massachusetts law or red herrings.

**(i).    Neither OneWest Nor U.S. Bank Had to Provide a "Complete Chain of Transfers" to Show that They Held Legal Title to the Mills Mortgage and Mills Note.**

As explained by the Massachusetts Supreme Judicial Court in *Ibanez*, where a pool of mortgage loans is assigned to a securitized trust, a trustee may establish itself as the holder of the underlying mortgage loan by proffering a copy of the trust agreement and associated schedule,

---

[50] *See id.*

[51] *See* SOF Nos. 3, 4.

[52] *See Gilbert v. Fed. Nat'l Mortg. Ass'n*, No. 2010-3158, 2011 WL 1364019, at *3 (Mass. Super. Ct. Mar. 31, 2011) (Leibensperger, J.) (dismissing 8 counts all based on theory that bank did not hold mortgage at foreclosure). Also, Count 5 ("**Failure of Conditions Precedent**") is not a recognized cause of action in Massachusetts. Rather, Count 5 appears to duplicate the claims made in Count 1. Likewise, Counts 14–17 ("**Unclean Hands**," "**Damage to Reputation**," "**Bad Faith**," and "**Estoppel**," respectively) are not recognized causes of action in Massachusetts. Rather, they either are affirmative defenses (Counts 14, 16, and 17) or allegations about Plaintiff's alleged damages (Count 15). This Court should summarily dismiss Counts 5 and 14–17 for these reasons alone.

[53] Plaintiff has not made a payment on the Mills Loan since July 2008.

which identifies the relevant mortgage loans at issue.[54]  Also, to evidence the appropriate linkage to a mortgage when MERS is the mortgagee of record, a foreclosing entity needs to provide *either* (1) a single assignment directly from MERS *or* (2) "a complete chain of assignments linking it to the mortgagee of record."[55]  OneWest opted to obtain a *single* assignment from MERS.[56]  OneWest need not proffer more than that.  Neither OneWest nor U.S. Bank had to provide a complete "chain of assignments" to comply with Massachusetts law.[57]  Furthermore, as shown in the Mortgage Loan Schedule attached to the Trust, U.S. Bank became the holder of the Mills Loan on March 1, 2007.[58]  As explained by the Bankruptcy Court:

> The fact that the debtors' promissory note passed like a hot potato down a line of owners . . . with no accompanying assignment of the note owner's beneficial interest in the mortgage, changes nothing. . . . [because] MERS remained the mortgagee in its capacity as [equitable] trustee and as nominee to whomever happened to own the note.[59]

Plaintiff's contrary arguments are inconsistent with Massachusetts law.[60]

---

[54] *See Ibanez*, 458 Mass. at 651, 941 N.E.2d at 53; *Schwartz v. HomeEq Servicing*, 461 B.R. 93, 94–95 (Bankr. D. Mass. 2011); *cf. Culhane*, 826 F. Supp. 2d at 358.

[55] *See Culhane*, 826 F. Supp. 2d at 361 (*citing Ibanez*, 458 Mass. at 651, 941 N.E.2d 40).

[56] *See* SOF No. 4.

[57] *See In re Marron*, 455 B.R. 1, 7–8 (Bankr. D. Mass. 2011).

[58] *See* SOF No. 3.  Plaintiff's reliance on the Trust closing date is misplaced.  When a lender uses a MERS mortgage, MERS remains the mortgagee of record so that the mortgage does not have to be recorded again and again during the life of the mortgage loan.  *See Culhane*, 826 F. Supp. 2d at 368–69.  This is contemplated by the very language in the Trust.  *See* Exhibit B hereto, § 2.01(c)(ii).  Plaintiff's reliance on the language in the MERS Assignment regarding transfer of the Mills Note is equally misplaced.  MERS did not hold the Mills Note, nor did MERS ever transfer any interest in it to anyone.  At all relevant times, any interest in the Mills Note was held first by MortgageIT and ultimately by U.S. Bank.  *See* SOF Nos. 1, 3.  The note transfer language is therefore superfluous.  *See Deutsche Bank Nat'l Trust Co. v. Cicchelli*, Nos. 10 MISC. 423350(AHS), 10 MISC. 436809(AHS), 2011 WL 3805905, at * (Mass. Land Ct. Aug. 24, 2011) ("The Deutsche Assignment assigns the mortgage 'together with the mortgage note secured thereby.'  Since MERS did not hold the Note, however, this language is superfluous and the Deutsche Assignment only transferred the Mortgage to Deutsche.").

[59] *See In re Marron*, 455 B.R. at 7.

[60] *See* Am. Compl. ¶¶ 79–84.

12

Even if the Mills Note was *not* transferred prior to the Trust actually closing, that would not impact OneWest's ability to foreclose.[61] In *Culhane*, this Court rejected the same argument and, in doing so, explained:

> Culhane makes much of the fact that the endorsement to Deutsche on the note and attached allonge is undated. While this Court agrees as a matter of law that the mortgagee must hold the note or be the servicing agent of the note holder *before* initiating foreclosure proceedings, here Aurora did. **Regardless of the date that Deutsche became the note holder, whether it was before or after the cut-off date for loans to be transferred into the RALI Series 2006-QO5 Trust, as of April 1, 2008, Aurora was servicing Culhane's loan for Deutsche. Aurora caused legal title to the mortgage to be assigned to it over a year after becoming the servicing agent**, and it did not send the notice of sale to be published until September 21, 2009.[62]

That is all that Massachusetts law requires. Just as in *Culhane*, the MERS Assignment was completed *after* OneWest became servicing agent for U.S. Bank and there is no question that U.S. Bank was trustee for the securitized trust into which the Mills Loan had been transferred at the time OneWest sent the foreclosure notice and sale.[63]

### (ii). The Mills Note and Mills Mortgage Were Not Voided When Split.

Plaintiff misconstrues Massachusetts law by claiming or implying that splitting the mortgage and note rendered the mortgage a nullity and underlying debt obligation void. Massachusetts follows the "title theory" of mortgages, i.e., when a mortgagor grants a mortgage, the mortgagor conveys legal title to the mortgaged property to the mortgagee for the purpose of

---

[61] Notably, the Trust itself contemplates transfers of loans into the Trust after the closing date. *See* <u>Exhibit B</u> hereto, § 1.01, at p. 41 (explaining that the Mortgage Loan Schedule "may be amended from time to time to reflect the addition" of mortgage loans). Also, although it is true that an assignment of a mortgage endorsed in blank is not valid under Massachusetts law, a note endorsed in blank is valid. *See Schwartz*, 461 B.R. at 99 n.5. That is because an assignment of a mortgage is a conveyance of a property interest; whereas, when a note is endorsed it blank, it merely becomes a debt instrument payable to bearer. *See id.* (note endorsed in blank gives holder right to enforce note, but this is not true in case of an assignment of a mortgage endorsed in blank as a mortgage is a conveyance of a property interest).

[62] *See Culhane*, 826 F. Supp. 2d at 379 (emphasis added).

[63] *See* SOF Nos. 3, 4.

13

securing the debt.[64]   As such, the mortgagor retains only equitable title and the mortgagee's legal title is subject only to the mortgagor's "right of redemption" (the right to repay the debt to avoid foreclosure).[65]   ***Unlike other jurisdictions***, in Massachusetts, the transfer of a promissory note secured by a mortgage does not automatically transfer legal title to the mortgage with it.[66] As a necessary and logical result, in Massachusetts, "different entities may hold the mortgage and underlying note."[67]   Nonetheless, as explained by the SJC in *Ibanez*, when a note and mortgage are split like this, the transfer of the note *does* automatically transfer an "equitable" interest in the mortgage to the note holder (as a mortgage cannot stand without an underlying debt instrument).[68] As explained in *Culhane*:

> [T]he common law of Massachusetts permits the practice of splitting the mortgage from the debt that it secures (at least prior to foreclosure). Such a split results in the mortgagee holding legal title to the mortgage in trust for the note holder, who has an equitable right to obtain an assignment of the mortgage. The mortgagee is thus a mortgagee in a nominal sense only; its rights are limited by its obligation as trustee. This is precisely the same scenario created by the standard MERS mortgage contract, irrespective of its use of the term "nominee" over "trustee."[69]

---

[64] *See Ibanez*, 458 Mass. at 649, 941 N.E.2d. at 51.

[65] *See Culhane*, 826 F. Supp. 2d at 362; *Ibanez*, 458 Mass. at 649, 941 N.E.2d. at 51; *Maldonado v. AMS Servicing LLC*, Nos. 11-40044, 11-40219, 2012 WL 220249, at *8 (D. Mass. Jan. 24, 2012) (Saylor, J.); *see also Hanna v. Framingham*, 60 Mass. App. Ct. 420, 425 n. 9, 802 N.E.2d 1061, 1066 (2004); *Adamson v. Mortg. Elec. Registration Sys., Inc.*, No. 11-0693-H, 2001 WL 4985490, at *8 n.9 (Mass. Super. Ct. Oct. 19, 2011).

[66] *See In re Marron*, 455 B.R. at 6; *Ibanez*, 458 Mass. at 652–53, 941 N.E.2d at 54 (the doctrine that the mortgage automatically follows the note "has not prevailed" in Massachusetts (quoting *Barnes v. Boardman*, 149 Mass. 106, 114, 21 N.E. 308 (1889)). Plaintiff asserts that the language of the Mills Mortgage nullifies this time-honored Massachusetts common law. *See* Am. Compl. ¶ 80(b). Plaintiff misreads and misapplies the language. The Mills Mortgage provides that the "Note or a partial interest in the Note (together with [the Mills Mortgage]) can be sold one or more times without prior notice" to Plaintiff. *See* SOF No. 2. As Plaintiff readily admits, the Mills Mortgage merely provides that the Mills Note "may be" sold with the Mills Mortgage. It assuredly does not state that the Mills Note "shall be" sold with the Mills Mortgage. Also, Plaintiff's views of the language would render appointing MERS as "nominee" for the Lender (clearly for the purpose of registering the mortgage loan with MERS and allowing the note to trade freely without needing to assign the mortgage) meaningless. Put simply, under Massachusetts law, MERS may assign a mortgage without holding the underlying note. *See Maldonado*, 2012 WL 220249, at *8; *In re Marron*, 455 B.R. at 5–6 (listing cases).

[67] *See Culhane*, 826 F. Supp. 2d at 362

[68] *See Ibanez*, 458 Mass. at 652–53, 941 N.E.2d at 54.

[69] *See Culhane*, 826 F. Supp. 2d at 370–71; *see also Bower*, 462 B.R. at 353–54.

14

That common law remains unchanged even when a mortgage loan is "pooled" in a trust and converted into a mortgage-backed security.[70]   To the extent the securitization process "splits" interests in the mortgage and promissory note, all a note holder (or servicer) need do is obtain an assignment of "legal title" to the mortgage from the mortgagee or its agent.[71]   In other words, the interests in the note and the mortgage must be "reunited" for a foreclosing entity to exercise the power of sale.[72]   That is exactly what occurred here.[73]

> ### (iii). Plaintiff Was Informed and Agreed that the Mills Note and Mills Mortgage Could Be Transferred and that the Lender Could Purchase the Mills Residence at a Foreclosure Sale.

Plaintiff makes much of the claim that she was not informed that the Mills Loan could be sold in the secondary market (although it is unclear which cause of action Plaintiff seek to support with that claim).[74]   This is a red herring.  When Plaintiff signed the Mills Note and Mills Mortgage, she, among other things, agreed that (1) the Mills Note could be transferred, and (2) upon her default in performance of that note, the Lender or its designee could purchase the property at a foreclosure sale.[75]   It is a staple of Massachusetts law that a party who signs a written agreement is bound by its terms whether or not they actually read the agreement or understood those terms.[76]   Plaintiff cannot now ignore the language of the documents she signed and lay blame on *anyone* for doing exactly what she agreed they could do if she did not pay back the money she borrowed to purchase the Mills Residence.  Even so, it is unclear how Plaintiff possibly was damaged by the securitization of the Mills Loan.  Regardless, this Court need not

---

[70] *See Culhane*, 826 F. Supp. 2d at 363.

[71] *See id.*.

[72] *See id.* at 366.

[73] *See* SOF Nos. 3, 4.

[74] *See id.* ¶¶ 10, 22.

[75] *See* SOF Nos. 1, 2.

[76] *See Miller v. Cotter*, 448 Mass. 671, 680, 863 N.E.2d 537, 545 (2007).

consider Plaintiff's claims here as they are contradicted by the documents she attached to the Amended Complaint.[77]

### (iv). MERS Had Authority to Assign the Mills Mortgage to OneWest.

Trying to seek support from statements made by MERS to the United States Senate, Plaintiff also attempts to undermine MERS's very authority to act as "nominee" for a lender and transfer mortgage interests.[78] Others have made the same attempt in Massachusetts and have failed. So too should Plaintiff.[79] Although "[c]ourts have struggled to understand the MERS system since it was created in 1993,"[80] **the prevailing view in Massachusetts is that MERS has the power to assign a mortgage by virtue of its "nominee" status.**[81] As explained in *Culhane*:

> [W]here a mortgagee holds legal title to the mortgage in trust for the note holder, and where the note holder desires to foreclose, "law or custom" in fact *necessitates* that, prior to initiating foreclosure proceedings, **the mortgagee must assign its interest to the note holder or the note holder's servicing agent.** The power to assign the mortgage's legal title to its beneficial owner is arguably the one power that must be bestowed on a mortgagee who holds only legal title.[82]

Accordingly, that MERS assigned the Mills Mortgage to OneWest as "nominee" was not improper. Plaintiff's other complaints about MERS lack merit.[83]

---

[77] *See Kiah*, 2011 WL 841282, at *1.

[78] *See* Am. Compl. ¶¶ 35–38.

[79] It is not even clear that Plaintiff has standing to mount any challenge to the MERS Assignment. *See Peterson v. GMAC Mortg., LLC*, No. 11-11115, 2011 WL 5075613, at *3–4 (D. Mass. Oct. 25, 2011) (Zobel, J.) (describing difference of opinion on a mortgagor's standing, noting that the issue "is apparently an open question in the First Circuit," and concluding that a mortgagor has no standing to contest a mortgage assignment to which they were not a party).

[80] *See Deutsche Bank Nat'l Trust Co. v. Pietranico*, 33 Misc. 3d 528, 541 (N.Y. Sup. Ct. 2011).

[81] *See generally Culhane*, 826 F. Supp. 2d at 371–72 (citing cases); *see also Maldonado*, 2012 WL 220249, at *8 (MERS may assign a mortgage even though MERS does not hold the associated promissory note).

[82] *See Culhane*, 826 F. Supp. 2d at 373 (emphasis added) (citation omitted)); *see also Bower*, 462 B.R. at 354 (quoting *Culhane*).

[83] *See, e.g.*, Am. Compl. ¶¶ 67–70. Plaintiff asserts that OneWest did not comply with Chapter 183, Section 21 because "[a]t no time was OneWest the successor and assign of MortgageIT," which Plaintiff describes as "the original mortgagee." *See* Am. Compl. ¶ 79. Plaintiff misreads the Mills Mortgage, which clearly states that "MERS

Plaintiff also argues that the MERS system of appointing certifying officers (which also are employees of servicing agents or law firms) invalidates the MERS Assignment. As explained in *Culhane*, however, MERS's method of appointing certifying officers does *not* violate Massachusetts law:

> MERS's certifying officers "purport [] to hold the position of . . . vice president, . . . . secretary, . . . [or] assistant to . . . such office or position." Mass. Gen. Laws ch. 183, § 54B. **That they hold themselves out as officers of MERS, the "entity holding [the] mortgage," is all that the statute requires with respect to a signor's authority.** The corporate resolution, however auto-generated, does give them actual authority to act on MERS behalf. . . . **This Court can discern no way in which MERS's procedure for assigning mortgages contradicts the letter of Massachusetts General Laws chapter 183, section 54B.**[84]

Plaintiff's contrary arguments are incorrect as a matter of law.[85]

---

is the mortgagee under this Security Instrument." *See* SOF No. 2. As such, all that Chapter 183, Section 21 requires was for MERS—and not MortgageIT, which was *never* the mortgagee—to assign the Mills Mortgage to OneWest. In addition, Plaintiff's citation to and reliance on the language of the Trust Agreement and New York law, *see* Am. Compl. ¶¶ 79(g), 81(c), is misplaced. Plaintiff is not a party to the Trust Agreement and may not enforce its terms. *See* SOF No. 3. Rather, the Mills Mortgage, which was executed in Massachusetts, provides that it "shall be governed by federal law and the law of the jurisdiction in which the property is located," i.e., Massachusetts. *See* SOF No. 2. As such, Massachusetts common and statutory law, not New York law, governs this dispute.

[84] *See Culhane*, 826 F. Supp. 2d at 375 (internal citations and footnote omitted) (alterations in original; emphasis added); *see also Mack v. Wells Fargo Bank, N.A.*, No. WOCV201002228, 2011 WL 4837261, at *5 (Mass. Super. Ct. Aug. 31, 2011). Under Massachusetts law, an assignment of a mortgage is binding if it is executed (1) "before a notary public, justice of the peace or other officer entitled by law to acknowledge instruments" and (2) "by a person purporting to hold the position of president, vice president . . . or other similar office or position, including assistant to any such office or position, of the entity holding such mortgage, or otherwise purporting to be an authorized signatory of such entity." *See* MASS. GEN. LAWS ch. 183, § 54B. That is the "heart of the" Chapter 183, Section 54 inquiry. *See Peterson*, 2011 WL 5075613, at *4. The existence of a notarized signature of a MERS vice president creates a presumption that the assignment is valid. *See id.* at *4–5; *In re Marron*, 455 B.R. at 8 (some jurisdictions require MERS to prove *both* its nominee status and the note holder's authorization to assign the mortgage, but Massachusetts does not; rather, in Massachusetts an assignment is valid so long as it facially complies with Chapter 183, Section 54B, without need for more). A complaint that fails to plead facts sufficient to challenge that presumption and the validity of the assignment must be dismissed. *See Peterson*, 2011 WL 5075613, at *5. In *Peterson*, not even allegations of "robo signing" or speculation that the signature on the assignment was forged, were enough to rebut that presumption. *See id.*

[85] *See* Amd. Compl. ¶¶ 51, 64–70.

## II. PLAINTIFF FAILS TO PLEAD ANY COGNIZABLE FRAUD CLAIMS, WITH OR WITHOUT PARTICULARITY.

It is beyond peradventure that allegations of "fraud . . . [and] the circumstances constituting fraud" must be "state[d] with particularity."[86] A plaintiff satisfies this heightened pleading standard by providing *specifics* as to *who* made the fraudulent representation, *where* it was made, and *when* it was made.[87] General or conclusory allegations of fraud do not suffice– nor do those that are based on speculation.[88] Also, beyond Rule 9(b), to state a claim for fraud, a plaintiff must plead, with particularity, that "the defendant [1] made a false representation of a material fact [2] with knowledge of its falsity [3] for the purpose of inducing the plaintiff to act thereon, and [4] that the plaintiff [reasonably] relied upon the representation as true and [5] acted upon it to his damage."[89]

Plaintiff's allegations do not even come close to satisfying these requirements. That is because Plaintiff bases her fraud claims (Counts 6 and 7) on her faulty challenges to the MERS system, securitization of the Mills Loan, and assignment of the Mills Mortgage.[90] Plaintiff has not even pleaded that U.S. Bank or OneWest made any false representations *to her* at all. Plaintiff does not proffer a single fact supporting the conclusory statement that she was induced to do anything or that she relied on any alleged misrepresentation by U.S. Bank or OneWest. That alone warrants dismissal of Plaintiff's fraud claims.

---

[86] *See* FED. R. CIV. P. 9(b); *N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8, 13 (1st Cir. 2009).

[87] *See Rodi v. S. New Eng. Sch. of Law*, 389 F.3d 5, 15 (1st Cir. 2004).

[88] *See Hayduk v. Lanna*, 775 F.2d 441, 444 (1st Cir. 1985).

[89] *See Barrett Assocs., Inc. v. Aronson*, 346 Mass. 150, 152, 190 N.E.2d 867, 868 (1963).

[90] *See* Am. Compl. ¶¶ 100–102, 104–105.

Even further, if Plaintiff actually had any viable fraud claims, those claims would be time barred. Massachusetts law sets a three-year statute of limitations on fraud claims.[91] Although it is not clear what statements were made *to Plaintiff* that she deems fraudulent, it would appear that she is referring to statements contained in the Mills Note and Mills Mortgage, each of which is dated October 6, 2006.[92] As such, Plaintiff had to commence this action by October 6, 2009. Plaintiff did not and may not do so now.

## III. PLAINTIFF HAS FAILED TO STATE ANY COGNIZABLE CLAIMS UNDER MASSACHUSETTS GENERAL LAWS CHAPTER 93A, SECTION 9.

Plaintiff asserts that OneWest and U.S. Bank violated Chapter 93A by (1) unlawfully foreclosing without the power of sale and (2) failing to honor a loan modification by IndyMac that allegedly was approved in 2008.[93] Among other things, to state a consumer claim under Chapter 93A, a plaintiff must allege that he or she sent a 30-day demand letter to the putative wrongdoer.[94] Sending a demand is not a procedural nicety, but rather, it is a "prerequisite to suit" under Section 9.[95] Plaintiff, however, admits in the Amended Complaint that she did *not* send a 30-day demand letter to OneWest or U.S. Bank before initiating this action in Barnstable

---

[91] *See* MASS. GEN. LAWS ch. 260, § 2A; *see also Jolicoeur v. S. New Eng. Sch. of Law*, 104 F. App'x 745, 746 (1st Cir. 2004).

[92] *See* Am. Compl. ¶¶ 100–102, 104–105. Of course, to the extent that Plaintiff asserts that OneWest or U.S. Bank made fraudulent statements to others, Plaintiff lacks standing to base fraud claims on those statements.

[93] *See* Am. Compl. p. 2 ("The Plaintiff further asserts that the Defendants have committed unfair and deceptive acts and practices with regard not only to foreclosure but by failing to honor a loan modification for which she had been approved."); Am. Compl. ¶ 95 ("The acts and omissions of OneWest and U.S. Bank . . . constitute unfair and deceptive acts and practices . . . ."). Although Plaintiff attempts to obfuscate the issue, Plaintiff admits that she does not even want the alleged modification offered by IndyMac in 2008; but rather, she wants a *better* loan modification from OneWest. *See* Am. Compl. ¶ 16. There is no duty under Massachusetts law to negotiate a loan modification after a default. *See Peterson*, 2011 WL 5075613, at *6. Rather a mortgagee is free to exercise whatever rights it acquired in the mortgage. *See id.*

[94] *See* MASS. GEN. LAWS ch. 93A, § 9(3).

[95] *See Entrialgo v. Twin City Dodge, Inc.*, 368 Mass. 812, 812, 333 N.E.2d 202, 204 (1975); *Kanamaru v. Holyoke Mut. Ins. Co.*, 72 Mass. App. Ct. 396, 407–08, 892 N.E.2d 759, 768 (2008).

Superior Court.[96]  As a result, this Court should dismiss Plaintiff's Chapter 93A claim (Count 4) in its entirety.

## IV. PLAINTIFF FAILS TO STATE A CLAIM UNDER THE MASSACHUSETTS CIVIL RIGHTS ACT.

Plaintiffs asserts that OneWest and U.S. Bank have violated her civil rights because they have discriminated against her based on her Native American heritage.[97]  To survive a motion to dismiss a claim under the Massachusetts Civil Rights Act, Massachusetts General Laws Chapter 12, Section 11I ("**MCRA**"), a plaintiff must allege "that (1) his [or her] exercise or enjoyment of rights secured by the Constitution or laws of either the United States or of the Commonwealth (2) has been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by threats, intimidation or coercion."[98]  Plaintiff, however, has not proffered any facts, let alone sufficient facts, even *suggesting* that OneWest and U.S. Bank threatened, intimidated, or coerced her to do or not do anything.[99]  Therefore, Plaintiff's cause of action under MCRA (Count 13) cannot survive dismissal.

---

[96] *See* Am. Compl. ¶ 95.

[97] *See* Am. Compl. ¶¶ 18, 125.

[98] *See Bally v. Northeastern Univ.*, 403 Mass. 713, 717, 532 N.E.2d 49, 51–52 (1989) (internal quotation marks omitted).

[99] Under MCRA, a *threat* is "the intentional exertion of pressure to make another fearful or apprehensive of injury or harm"; *intimidation* is "putting [one] in fear for the purpose of compelling or deterring conduct"; and *coercion* is "the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done."  *See Haufler v. Zotos*, 446 Mass. 489, 505, 845 N.E.2d 322, 335 (2006) (citations and internal quotation marks omitted).

BOS 46,971,647v3 7-27-12

<u>**CONCLUSION**</u>

For the foregoing reasons, this Court should enter an order granting OneWest and U.S. Bank's motion to dismiss and affording OneWest and U.S. Bank any other relief this Court deems just and equitable.

> ONEWEST BANK, FSB and U.S. BANK
> NATIONAL ASSOCIATION AS
> TRUSTEE FOR THE LEHMAN XS
> TRUST, MORTGAGE PASS-THROUGH
> CERTIFICATES, SERIES 2007-4N,
>
> By their attorneys:
>
> /s/ David G. Thomas
> David G. Thomas (BBO # 640854)
> Russell P. Plato (BBO # 671087)
> Greenberg Traurig, LLP
> One International Place
> Boston, Massachusetts 02110
> Tel: (617) 310-6000
> Fax: (617) 310-6001

Dated: July 27, 2012

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that paper copies will be sent all those non-registered participants on July 27, 2012.

> /s/ David G. Thomas