**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| |
|---|
| RHONDA G. MILLS, |
| Plaintiff, |
| v. |
| U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE FOR THE LEHMAN XS TRUST, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-4N, et al. |
| Defendants. |

**CASE NO.:  1:12-cv-10937-JLT**

## PLAIANTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, WITH MEMORANDUM OF REASONS

In accordance with Local Rule 7.1, the Plaintiff RHONDA G. MILLS hereby states her opposition to the Defendants' motion to dismiss.

## MEMORANDUM OF REASONS

### I.  The Plaintiff's Case

In their Motion to Dismiss, the Defendants[1] have wholly misconstrued what this case is mainly about and have instead gone to considerable lengths to refute claims the Plaintiff has not made.  In the process, they attempt with Procrustean zeal to force the Plaintiff's case into a bed of decisional law they believe is to their advantage but which is in fact of limited relevance.  Their effort has little to recommend it.  The crux of the Plaintiff's case

---

[1] The Defendants filing the motion to dismiss are OneWest and  U.S. Bank; Defendant MERS has been served but has yet to respond.

lies not simply in the fact that OneWest[2] failed to strictly comply with the requirements of M. G. L. c. 183, § 21 and that it therefore did not have authority to exercise the power of sale; rather, it lies in the specific reasons for this as set forth by the Plaintiff in her verified mended complaint ("complaint"). It is here that the Defendants have veered off the mark in their analysis and are in any event not entitled to dismissal. ***Two of these reasons are matters of first impression before this Court:***

> (1) That ownership of a mortgage interest is not and cannot be transferred from one person to the next during the securitization process merely because they have all decided to use MERS as their common agent; that the only way for such transfers to be made under existing Massachusetts law is by proper written assignment; that because there are no assignments in the instant case prior to the assignment from MERS to OneWest, OneWest took nothing and had no power of sale to exercise; and, finally, that any assertion to the contrary is a false representation of material fact calculated to circumvent the strict procedures required under Massachusetts law in order to exercise the power of sale.

> (2) That M. G. L. c. 183 54B must either be harmonized with other statutes relating to foreclosure by exercise of the power of sale or it must be declared unconstitutional as applied under the Declaration of Rights to the Massachusetts Constitution for failing to require that the person who signs and acknowledges an assignment of mortgage ***in a representative capacity*** establish beyond question that the "mortgagee" on whose behalf he is signing and acknowledging is in fact the mortgagee—that is to say, the owner of legal title to the secured property.

Clearly, both of these reasons overlap in some degree because if the Court were to interpret M. G. L. c. 183, § 54B as the Defendants have expressed in their memorandum, an assignment would be "valid" merely because the person signing and acknowledging it "purports" to be doing so on behalf of the current mortgagee even when the "current mortgagee" (whose identity we do not know, given the opacity of the MERS system)

---

[2] This case is highly unusual because, according to the trust agreements, the Lehman XS Trust acquired ownership of the Plaintiff's mortgage loan in 2007. In 2009, MERS then purportedly assigned it to the current servicer, OneWest, individually. OneWest then sold the mortgage loan back to the Lehman XS Trust in 2011, which would certainly indicate that OneWest had been servicing the loan for someone other than the Lehman XS Trust. It is therefore difficult, so to speak, to know which shell conceals the pea—that is, to know who, if anyone, actually owned the mortgage loan before and after the assignment. It is for this reason that use is made of the plural form, "Defendants."

does **not** in fact own the mortgage. In such a case, as here, the statute is in effect used as a device by which to "launder" a fraudulent transfer and to place the illegal foreclosure it entails safely beyond the reach of the court.[3] Therein lies the constitutional issue—and perhaps an element of criminality.[4]

Other factors have been raised in the complaint as well, on the premise that there remains ample room for argument with regard to the manner and extent to which they bear upon the Plaintiff's case. Their omission from this memorandum shall not be construed as a waiver.[5] Should the Court request any further briefing, the Plaintiff stands willing and prepared to do so. For the sake of brevity, the facts as set forth in the complaint are incorporated herein by reference.[6]

## II. The Legal Standard

Under Rule 8 of the Federal Rules of Civil Procedure, a complaint must contain a short and plain statement of the claim, showing that the pleader is entitled to relief.[7] Rule 9, on the other hand, states that fraud and the denial that a conditional precedent has occurred must be plead with particularity.[8] When evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court must accept all of the Plaintiff's

---

[3] See, e.g. <u>Culhane v. Aurora Loan Services of Nebraska,</u> 826 F. Supp. 2d 352 (D. Mass. 2011), a case on which the Defendants place considerable reliance.

[4] Compl. ¶¶ 103-105, referring to M. G. L. c. 266, § 35A(b)(4).

[5] There are, for example, questions surrounding the Trust and how, if the Trust acquired the mortgage loan in 2007, the same mortgage could be assigned to the servicer in 2009 and then sold to the Trust in 2011. To be clear, the Plaintiff is not seeking to enforce the terms of the Trust, but is pointing to these irregularities as proof that the chain of ownership has been compromised and that OneWest's claim to be the successor and assign of the originating lender, to use the vernacular, simply ain't so. Regardless of whether it occurred on or before December 28, 2006 (the closing date) or on April 24, 2009 (the date of the assignment) the purported transfer to the Trust was in violation of the Trust agreements and New York law.

[6] Compl. ¶¶ 7-75.

[7] Fed. R. Civ. P. 8.

[8] Fed. R. Civ. P. 9.

factual allegations as true; scrutinize them in the light most favorable to the Plaintiff; and in so doing draw all reasonable inferences in the Plaintiff's favor.[9] The inquiry is limited to the facts alleged in the complaint, incorporated into the complaint, or susceptible to judicial notice.[10]

Moreover, the complaint must contain a plausible claim for relief, and making such a determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[11] Although legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."[12] Bare assertions and conclusions of law are not entitled to similar weight,[13] and a complaint must state sufficient facts such that "the combined allegations, taken as true, must state a plausible, not merely conceivable, case for relief."[14]

The present case is before the Court under diversity jurisdiction, and is governed primarily by Massachusetts foreclosure law, but also by the common law of agency and the common law of contracts. Given the richness, complexity, and still emerging nature of the legal context surrounding the foreclosure crisis, the Plaintiff's verified amended

---

[9] Miller Investment Trust v. Morgan Stanley & Co. Inc. No. 1:11-ev-12126-JLT (D. Mass. July 24, 2012) (Memorandum, Tauro, J.) citing Pettengill v. Curtis, 584 F. Supp. 2d 348, 362 (D. Mass. 2008) (quoting Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 96 (1st Cir. 2007)); Fothergill v. United States, 566 F.3d 248, 251 (1st Cir. 2009).

[10] In re Prograf Antitrust litigation, No. 1:11md-2242-RWZ (D. Mass. February 1, 2012) (Order, Zobel, J.) citing In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 15 (1st Cir. 2003).

[11] Ashcroft v. Iqbal, 129 S.Ct 1937, 1949 (2009).

[12] Id. at 1950.

[13] Phillips v. City of Methuen, 818 F. Supp. 2d 325, 329 (D. Mass. 2011) (Tauro, J.).

[14] Raso v. RPM Restoration & Waterproofing LLC, No. 10-CV-10809-JLT, 2012 WL 1192772, at *1 (D. Mass. April 9, 2012) (Tauro, J.) (citing Sepulveda-Villarini v. Dep't of Educ. Of Puerto Rico, 628 F.3d 25, 29 (1st Cir. 2010)).

complaint ("complaint") is not in any way shape or form a mere formulaic recitation of the elements of a cause of action,[15] an offer of "labels and conclusions,"[16] or "an unadorned, the-defendant-unlawfully-harmed-me accusation."[17]  ***On the contrary, the complaint presents a clear, readily comprehensible recitation of what has happened, why it should not have happened, and what should be done about it.  It is therefore entitled to the presumption of truth, and further describes in sufficient detail the reasons why the Plaintiff is entitled to relief under existing Massachusetts law.***

### III.  The Plaintiff's Argument

1.  The Defendants failed to follow strictly the terms of the statutory power of sale as required by M. G. L. c. 183, § 21 and affirmed by the Supreme Judicial Court in U.S. Bank National Association v. Ibanez and were therefore without authority to foreclose the Plaintiff's mortgage.

The bedrock on which the Plaintiff's complaint rests is Count 1, which then elaborates itself into the remaining counts.  Count 1 sets forth a number of violations of M. G. L. c. 183, § 21 ("section 21")—the statutory power of sale in Massachusetts.[18] Because Section 21 demands strict compliance with its provisions, any ***one of the violations alleged by the Plaintiff would alone vitiate OneWest's authority to exercise the statutory power of sale.  The complaint therefore states multiple claims on which***

---

[15] Id.

[16] Id.

[17] Ashcroft, 129 S.Ct at 1949, citing Bell Atlantic Corp. v. Twombly, 550 US 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929.

[18] "***But upon any default*** in the performance or observance of the foregoing or other condition, ***the Mortgagee*** or his executors, administrators, successors or assigns ***may sell the Mortgaged premises*** or such portion thereof as may remain subject to the Mortgage in case of any partial release thereof, either as a whole or in parcels, together with all improvements that may be thereon, by public auction on or near the premises then subject to the Mortgage, or, if more than one parcel is then subject thereto, on or near one of said parcels, or at such place as may be designated for that purpose in the Mortgage, ***first complying with the terms of the Mortgage and with the statutes relating to the foreclosure of Mortgages by the exercise of a power of sale,*** and may convey the same by proper deed or deeds to the purchaser or purchasers absolutely and in fee simple; and such sale shall forever bar the mortgagor and all persons claiming under him from all right and interest in the Mortgaged premises, whether at law or in equity [emphasis added]."

*relief may be granted.* Not least, the Court is bound by the plain language of the statute.[19]

It bears noting that in their memorandum the Defendants do not exactly deny any of these violations but instead seek to trivialize or dispel them by the sophistical device of citing authorities that do not squarely address the particular lines of argument advanced by the Plaintiff.[20] The ability of an act to survive one line of attack does not necessarily entail the ability to survive another, and to pronounce an act "legal" before all lines of attack have been exhausted is to place in peril the essence and purpose of our judicial system.

To return, then, to Section 21; as explained by the Massachusetts Supreme Judicial Court in U.S. Bank National Association v. Ibanez,[21]

> *Where a mortgage grants a mortgage holder the power of sale . . . it includes by reference the power of sale set out in G. L. c. 183, § 21,* and further regulated by G. L. c. 244, §§ 11-17C. . . .
>
> Recognizing the substantial power that the statutory scheme affords to **a Mortgage holder** to foreclose without immediate judicial oversight, we adhere to the familiar rule that *"one who sells under a power [of sale] must follow strictly its terms. If he fails to do so there is no valid execution of the power, and the sale is wholly void."* Moore v. Dick, 187 Mass. 20, 211 (1905). See Roche v. Farnsworth, 106 Mass. 509, 513 (1871) (**power of sale contained in Mortgage**

---

[19] Water Department of Fairhaven v. Department of Environmental Protection, 455 Mass. 740, 744 (2010) ("Where the words [of the statute] are "plain and unambiguous" in their meaning, we view them as "conclusive as to legislative intent.") citing Sterilite Corp. v. Continental Cas. Co., 397 Mass. 837, 839 (1986).

[20] By way of example, the Defendants rely heavily on Culhane v. Aurora Loan Services of Nebraska, 826 F. Supp. 2d 352 (D. Mass. 2011) (Young, J.), a case that did not, despite a remarkably thoughtful and erudite analyses of MERS, address the question of how the mere election of MERS as a common agent could possibly serve to transfer ownership of the mortgage interest from one person to the next during the securitization process under Massachusetts law, and, if not, by what means such transfers must be made. As will be explained below, this is a salient question in the present case. In comparison, the Culhane decision focuses on the question, *post facto*, of whether or not MERS has the authority to act on a person's behalf *once that person is in fact the owner of the mortgage*—a question the Plaintiff in the present case has never raised. Culhane is presently on appeal before the First Circuit Court of Appeals on this and other issues.

[21] U.S. Bank National Association v. Ibanez, 458 Mass. 637, 646-647 (2011).

*"**must be executed in strict compliance with its terms**"*). See also McGreevey v. Charlestown Five Cents Sav. Bank, 294 Mass. 480, 484 (1936) [emphasis added].

It is worth bearing in mind that although the preceding statement focuses on the element of strict compliance, it also makes clear that **only the actual holder of the mortgage[22] may exercise the power of sale.**[23] That said, Count 1 is stated with particularity because Section 21 contains four conditions precedent, three of which were not satisfied by OneWest, and the fourth—the necessity of a default on the borrower's part—was met only with the "assistance" of OneWest, which approved but then never followed through with the Plaintiff's application for a loan modification **at a time when she was still current on the loan.**[24]

The other conditions precedent are that in order to legally exercise the power of sale one must (1) be the mortgagee or the mortgagee's successor and assign; (2) comply with the terms of the mortgage; and (3) comply with the statutes pertaining to foreclosure by exercise of the power of sale. For the reasons stated in Count 1 of the complaint, none of these conditions were satisfied or met by OneWest.[25] Therefore OneWest never achieved mortgagee status and any assertions to the contrary are representations of

---

[22] Given the functional identity between principal and agent, "mortgage holder" would presumably include a mortgage holder's representative—bearing in mind, of course, that before an agent may act on behalf of a principal with regard to a certain mortgage, the principal must in fact own the mortgage. This follows from elementary principles of agency law in Massachusetts as well as common sense. I may not convey to you, directly or through an agent, what is not already mine to convey, nor does it become mine to convey simply because you have also decided to use the same agent when it comes your time to convey it.

[23] See M. G. L. c. 244, §14: "The **Mortgagee** or person having his estate in the land Mortgaged, **or a person authorized by the power of sale**, or the attorney duly authorized by a writing under seal, or the legal guardian or conservator of such Mortgagee **or person acting in the name of such Mortgagee** or person, may, upon breach of condition and without action, do all the acts authorized or required by the power . . . [emphasis added]."

[24] Compl. ¶¶ 13-18.

[25] Compl. ¶¶ 43, 76-85.

material fact the falsity of which was either known or in any event susceptible of actual knowledge by the Defendants.[26]  For that reason, too, Count 1 is stated with particularity.

The complaint provides a number of reasons why OneWest was at no time the mortgagee; was at no time the originating lender's successor and assign; and at no time had the authority to exercise the power of sale.[27]  Perhaps the most damning reason is one that has thus far managed to elude the scrutiny of the courts:  that neither MERS nor the person it was representing[28] at the time of the assignment actually owned the mortgage under Massachusetts law because the mere choice by persons to whom the mortgage purportedly passed during the securitization process to use MERS as their common agent does not, under long-established Massachusetts law, alone serve to transfer ownership of the mortgage from one person to the next.[29]

Here is why:  in order to remain a mortgagee of record, MERS must either *be* the mortgagee—that is to say, it must own the mortgage interest—or it must *represent* the originating lender and every successor and assign of the originating lender.

The mortgage contract states plainly and unequivocally that MERS is *both* the nominee for the lender and the lender's successors and assigns, *and* that MERS is the mortgagee.  Page 1, ¶ C states: in relevant part,

> **"MERS"** is Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is acting solely as a nominee for Lender and lender's successors and assigns.  **MERS is the mortgagee under this Security Instrument** [bold in original].

---

[26] Compl. ¶¶ 99-105.

[27] Compl. ¶ 79(a)-(g).

[28] Due to the opacity of the MERS system in which only the originating lender is named in the public record the identity of the current holder of the mortgage is yet unknown.

[29] Again, this particular line of attack was not addressed in Judge Young's compelling analysis of MERS in Culhane.

Page 2 of the mortgage contract adds to the confusion by stating, in relevant part:

> ***Borrower does hereby Mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS,*** with power of sale, the following described property . . . [emphasis added].

Here the mortgage is granted to MERS solely as nominee, but then also to the successors and assigns ***of MERS***—and MERS could only have its own successors and assigns if it actually owned the mortgage; otherwise the successors and assigns would be those of the originating lender, not MERS. [30] It is fair to say, then, that there is ambiguity in this. [31] This has led to some debate in the courts as to how MERS could be both principal and agent with regard to the same interest at the same time. [32]

However, when a contract is found to be ambiguous, the court is free to look to extrinsic evidence in order to give a reasonable construction in light of the intentions of the parties at the time of formation of the contract. [33] In the present case we need not look very far: ***MERS is, without question, prevented by its own rules, policies, and procedures from owning any beneficial interest whatsoever in the note or the mortgage***

---

[30] Unless, of course, we interpret "the successors and assigns of MERS" to mean the successors and assigns of MERS ***in its role as agent or nominee*** for the real owner. Either way, we cannot avoid the fact that the role MERS is to play under the mortgage contract is a material term the precise meaning and delineation of which ought to be absolutely clear and not fraught with ambiguity. Given that the mortgage contract could not be more ambiguous in this regard, its validity might well be challenged on this point alone.

[31] <u>President and Fellows of Harvard College v. Peco Energy Company,</u> 57 Mass. App. Ct. 888, 896 (2003) ([Ambiguity exists] "where the phraseology can support reasonable difference of opinion as to the meaning of the words employed and the obligations undertaken."), citing <u>Suffolk Constr. Co. v. Lanco Scaffolding Co.,</u> 47 Mass. App. Ct. at 729, quoting from <u>Fashion House, Inc. v. K Mart Corp.,</u> 892 F.2d 1076, 1083 (1st Cir. 1989).

[32] See, e.g. <u>In re Agard,</u> 444 B.R. 231, 248-49 (Bankr. E.D.N.Y. 2011); <u>Landmark Nat'l Bank v. Kesler,</u> 216 P.3d 158, 165-66 (Kan. 2009) (stating that MERS defines its role "in much the same way that the blind men of Indian legend described an elephant — their description depended on which part they were touching at any given time"); <u>Culhane v. Aurora Loan Services of Nebraska,</u> 826 F. Supp. 2d 352 (D. Mass. 2011) (Young, J.) and authorities cited therein.

[33] <u>57 Mass. App. Ct. at 896</u> ("[w]hen the parties to a bargain sufficiently defined to be a contract have not agreed with respect to a term which is essential to a determination of their rights and duties, a term which is reasonable in the circumstances is supplied by the court." (internal citations omitted).

**and therefore cannot be the mortgagee in any strict, legal sense of the word**—that is, it cannot be the actual owner of legal title to the secured property. This is made clear from the various MERS documents and from R. K. Arnold's Senate Testimony, all of which are presented in the Plaintiff's complaint and supporting exhibits and are incorporated by reference herein.[34] Their truthfulness cannot be denied by the Defendants.[35]

And yet, in order to deliver on its promise of allowing lenders to avoid having to make multiple assignments of the mortgage during the securitization process, MERS must be able somehow to remain the mortgagee of record at the local land office. In order to do so—and to escape this apparent conundrum—MERS has created an ingenious device: it has divided the mortgage interest into a "legal" part and a "beneficial" part.

Before delving into this, it is important to bear in mind that **in Massachusetts, a mortgage is by definition already a divided interest in the secured property, with the mortgagee taking legal title and the mortgagor retaining the beneficial interest or equity of redemption.**[36] This "traditional" model may be visualized as follows:

---

[34] Compl. ¶¶ 31-38; 66-68; Exhibits 6-10.

[35] A further point in this regard is this: where the language of a statute is clear and unambiguous it must be given its ordinary meaning. Rate Setting Commission v. Faulkner Hospital, 411 Mass. 701, 705, n. 8. (1992), citing Hashimi v. Kalil, 388 Mass. 607, 610 (1983). Conspicuous by its absence from this list of those who may exercise the power of sale in Section 21 is the term agent or nominee—neither of which has an ownership interest in the mortgage but would act solely in a representative capacity for the real owner. The express mention of those who own the mortgage and the omission of those who do not evinces an intention to *exclude* those who do not, *Expressio unius est exclusion alterius; inclusio unius est exclusion alterius. See,* McArthur Brothers Co. v. Commonwealth, 197 Mass. 137 , 139. (1908) (Express mention of one matter excludes by implication other similar matters not mentioned). "While this maxim is not a rule of law and is to be applied with caution, it is an aid in construction where other clearer indications are lacking." Iannelle v. Fire Commissioner of Boston, 331 Mass. 250, 252-53 (1954), citing Neuberger v. Commissioner of Internal Revenue, 311 U.S. 83, 88 (1940); United States v. Barnes, 222 U.S. 513, 519 (1912). With regard to G. L. c. 183, § 21, There are no "clearer indications." Thus it bears repeating that, by the plain language of § 21, only the actual mortgagee may exercise the power of sale.

[36] See U.S. Bank National Association v. Ibanez, 458 Mass. 637, 649 (2011) (When a person borrows money to purchase a home and gives the lender a mortgage, the homeowner-mortgagor retains only equitable title in the home; the legal title is held by the mortgagee).



Such is the case when the originating lender has retained the mortgage. However, when MERS comes into the picture, everything changes. The MERS model takes the **legal interest** to the secured property and splits it into a "legal" part and a "beneficial" part with MERS "holding" the one while the "beneficial" owner holds the other.[37] It is by this sleight of hand that MERS is able to "be" the mortgagee for recording purposes without actually being the mortgagee. Thus the MERS model may be visualized as follows:



This is problematic. For one, no law supports the proposition that the well-settled sanctity of contract entails the right to create new public law by private agreement. And by further dividing the legal title to a secured property into "legal" and "beneficial" parts by a private contractual agreement (which it may then seek to enforce through the courts) MERS has done precisely that—it has created new law. Nor was this "arrangement" within the contemplation—let alone the comprehension—of the Plaintiff when she signed the mortgage contract on the assumption that MERS was simply **the** mortgagee.

---

[37] This in effect creates something akin to a mortgage or deed of trust within a mortgage and (bearing in mind that the mortgagor retains the beneficial interest in the mortgage) a further division of an already divided interest.

But more importantly, even if we assume for argument's sake that this further division of the mortgage interest is perfectly legal, it leads us to a conclusion from which there is no escape: the further division that is the lynchpin of the MERS model *clearly establishes a representative relationship in which the "beneficial" owner is the actual mortgagee and MERS is its agent, nominee, or quasi-trustee—call it what we may.* The dual roles of "nominee" and "mortgagee" are in substance both *representative roles* and entail no ownership or beneficial interest whatsoever in the secured property or the note. It bears repeating that *the "beneficial owner" is the real and only mortgagee.*

Thus the concept of "MERS as mortgagee" is at best *a coded reference* to a unique species of agency—a coded reference designed to allow MERS to remain the mortgagee of record at the local land office without the need for written assignments with every transfer. From this it would appear that the ambiguity in the MERS mortgage is innocuous and that the MERS model is rescued from ruin. In fact, much the opposite is true, and it is here that the MERS model fails of its essential purpose—at least in part. Here is why:

Had the mortgage remained "in-house" with the originating lender, a subsequent transfer by MERS in a representative capacity within the scope of its authority would hardly be noteworthy; given the functional identity between principal and agent, such a transfer would, on well-established principles of agency law, be deemed to have been made *by the originating lender*. *However, during the securitization process, as in the present case, the mortgage interest is typically transferred a number of times in order to fully separate it from the financial fortunes and misfortunes of the originating*

***lender and make it bankruptcy remote and thus more inviting to investors.*** Our diagram now looks, typically, like this:



The question then, becomes this: ***in the MERS model, how, exactly, does ownership of the mortgage interest (which means the "beneficial half" of the legal interest) actually pass from one person to the next during the securitization process?*** The assignment from the originating lender is not a problem because the originating lender clearly ***is*** the mortgagee (with or without MERS acting on its behalf). But what of the subsequent transfers?

A widespread and woefully unexamined assumption that has been elevated to high fashion by the mortgage industry is that when consecutive "owners" of the mortgage all designate MERS as their common agent, ownership of the mortgage is somehow transferred from one "owner" to the next, as if by alchemy or induction—and that there is no need for written assignments, save at the very end. In point of fact, ***the proposition that a mere choice by consecutive "owners" of the mortgage interest to use MERS as their common agent somehow transfers ownership of the mortgage interest from one consecutive "owner" to the next is wholly without support under any recognized principle of law within the Commonwealth of Massachusetts.***

Any conclusion to the contrary is reached solely through the use of rhetorical smoke and mirrors, and the Defendants provide no incisive authority or reasoned analysis to suggest otherwise. The question of whether or not MERS has the legal right to assign a mortgage and the question of whether or not the person on whose behalf MERS is making the assignment owns the mortgage in the first place are two entirely separate questions.[38] Culhane, on which the Defendants rely, did not address the second of these, and the Supreme Judicial Court, which has the final word with regard to Massachusetts law,[39] has yet to address either question.

To be clear, there is no discernable reason in the law why MERS should not act as agent for consecutive owners of the mortgage interest or make assignments in that capacity—*but that is precisely the point: these "owners" must in fact be owners of the mortgage in order for MERS to act on their behalf with regard to that mortgage.*[40] An agent can simply not represent a principal with regard to an interest to which the principal has no claim at that time—that is to say, an agent may only do what the principal himself may do and, conversely, may not do what the principal himself may not do were he to act on his own behalf.[41]

That said, we are still faced with the question of how those who become "owners" of the mortgage during the securitization process in fact become owners. ***The answer is***

---

[38] In its memorandum, the Defendants go to considerable lengths to address the first question, which, again, is not in dispute, while altogether ignoring the critical second question; and yet they have the temerity to ask the Court for dismissal.

[39] "It bears noting that only one Massachusetts court, the Supreme Judicial Court, may definitively prescribe binding rules of decision on matters of Massachusetts law." U.S. District Court Judge Douglas P. Woodlock in Vertex Surgical Inc. v. Paradigm Biodevices, Inc., 648 F.Supp. 2d 226, 231, n. 2 (D. Mass. 2009).

[40] This seemingly obvious and yet widely overlooked fact bears heavily on an equally widespread misinterpretation and misapplication of M. G. L. c. 183, § 54B—as is discussed below.

[41] *See* 2A C.J.S. *Agency* § 129 (2003) and cases cited therein.

*that under Massachusetts law there is only one way: an assignment of mortgage is the transfer of an interest in land and must be in writing and signed by the person to be bound, regardless of whether it is made by that person or by MERS acting on that person's behalf.*[42]  A single assignment may suffice, *but only if the assignor is in fact the mortgagee*—and this is a point blatantly misrepresented by the Defendants, who suggest in their memorandum that a single assignment is valid in every case no matter what came before.  In point of fact, any break in the chain of ownership will necessarily render a subsequent assignment meaningless and void.  Ibanez:

> However, *there must be proof that the assignment was made by a party that itself held the mortgage.* See In re Samuels, 415 B.R. 8, 20 (Bankr. D. Mass. 2009). A foreclosing *entity may provide a complete chain of assignments* linking it to the record holder of the mortgage, *or a single assignment from the record holder of the mortgage.* See In re Parrish, 326 B.R. 708, 720 (Bankr. N.D. Ohio 2005) ("If the claimant acquired the note and mortgage from the original lender or from another party who acquired it from the original lender, the claimant can meet its burden through evidence that traces the loan from the original lender to the claimant"). *The key in either case is that the foreclosing entity must hold the mortgage at the time of the notice and sale in order accurately to identify itself as the present holder in the notice and in order to have the authority to foreclose under the power of sale* (or the foreclosing entity must be one of the parties authorized to foreclose under G. L. c. 183, § 21, and G. L. c. 244, § 14).

Ibanez, 458 Mass. at 651 [emphasis added].

There is not one shred of  evidence in the present case that any of the "transfers" that purportedly took place prior to the final "assignment" from MERS to OneWest came by way of a proper written assignment—which makes a nullity of the assignment from MERS and points to the fact that the Defendants simply cannot prove they have ever

---

[42] Ibanez, 458 Mass. at 649 ("Like a sale of land itself, the assignment of a mortgage is a conveyance of an interest in land that requires a writing signed by the grantor. See G. L. c. 183, § 3; Saint Patrick's Religious, Educ. & Charitable Ass'n v. Hale, 227 Mass. 175 , 177 (1917)).  See also, M. G. L. c. 259, § 1 (Statute of Frauds) and M. G. L. c. 183, § 3, which states:  "An estate or interest in land created without an instrument in writing signed by the grantor or by his attorney shall have the force and effect of an estate at will only, and no estate or interest in land shall be assigned, granted or surrendered unless by such writing or by operation of law."

owned the mortgage or the mortgage loan. It follows that OneWest never acquired mortgagee-status; that it was a mere pretender to the throne; that it failed to strictly comply with M. G. L. c. 183, § 21; that it had no power of sale; and that all assertions to the contrary were false representations of material fact which were either known or susceptible of actual knowledge and thus calculated to do an end run around the proper statutory procedures for carrying out the foreclosure of a mortgage.[43] The subsequent "sale" of the property by OneWest to a trust that purportedly had already owned the mortgage for some four years is a fair summation of the slipshod nature of the foreclosure in this case.

---

[43] The Defendants state, incredulously, that the Plaintiff "fails to plead any cognizable fraud claims." In fact, these claims have been referred to in many parts of the complaint and have been plead with particularity in Counts 1, 6, and 7 and are incorporated by reference herein. At common law in Massachusetts, the elements of fraudulent misrepresentation are that the defendant made a false representation of material fact with knowledge of its falsity for the purpose of inducing the plaintiff to rely upon it and that the plaintiff relied upon it to his detriment. Reisman v. KPMG Peat Marwick LLP., 57 Mass. App. Ct. 100, 108 (2003), citing International Totalizing Sys. v. PepsiCo, Inc., 29 Mass. App. Ct. 424 , 431 (1990). The party making the representation need not know that the statement is false if the fact it represents is susceptible of actual knowledge. See Vmark Software, Inc. v. EMC Corp., 37 Mass. App. Ct. 610, n. 9 (1994), citing Zimmerman v. Kent, 31 Mass. App. Ct. 72, 77 (1991). See also Nolan and Sartorio, *Tort Law*, 37 M.P.S. § 8.2 (3rd ed. 2005); 37 C.J.S., *Fraud*, § 13 (2008); Rest. 2d Torts, § 525 (1977).

Nor must the Defendants have had an intent to deceive. See Harris v. Delco Products, Inc., 305 Mass. 362, 364-365 (1940) ("If a statement of a fact which is susceptible of actual knowledge is made as of one's own knowledge, and is false, it may be made a foundation of an action for deceit without further proof of an actual intent to deceive.") quoting Chatham Furnace Co. v. Moffatt, 147 Mass. 403, 404 [1888]; Powell v. Rasmussen, 355 Mass. 117 , 118 (1969); Yorke v. Taylor, 332 Mass. 368, 371 (1955). See also Nolan and Sartorio, *Tort Law*, 37 M.P.S. § 8.3, pp. 250-251 (3rd ed. 2005); and again, "It is the general rule that '[i]f a statement of fact which is susceptible of actual knowledge is made as of one's own knowledge and is false, it may be the basis for an action of deceit without proof of an actual intent to deceive.'" Kozdras, *supra* at 43, quoting Pietrazak v. McDermott, 341 Mass. 107, 110 (1960).

On the question of third-party reliance, see Reisman v. KPMG Peat Marwick LLP., 57 Mass. App. Ct. 100, 108 (2003) ("The Reismans were not required to show that Peat Marwick's misstatements were made with the specific purpose of inducing the Reismans' reliance. They could also satisfy their burden by showing, as they did, that they were among those whom Peat Marwick had reason to expect would rely upon its statements") In this regard, see also the Restatement (Second) of Torts § 533 (1977). Statements made to the Court in the Servicemembers action and to registry officials involve such third-party reliance. For an excellent analysis of the subject, see Bridge v. Phoenix Bond & Indemnity Co., 128 S.Ct. 2131 (2008). Also see Nolan and Sartorio, *Tort Law*, 37 M.P.S. § 8.4, pp. 251-252 (3rd ed. 2005).

With regard to negligent misrepresentation, see Gossels v. Fleet National Bank, 453 Mass. 366, 371-372, citing Nycal Corp. v. KPMG Peat Marwick LLP, 426 Mass. 491, 495-496 (1998), quoting Restatement (Second) of Torts § 552 (1977). See also Golber v. BayBank Valley Trust Co., 46 Mass. App. Ct. 256 , 257 (1999); Restatement (Second) of Torts § 552(2)

In summary, the chain of title was broken **before** the mortgage was "assigned" by MERS to OneWest. Therefore, regardless of whether or not the "assignment" is formally correct, beyond reproach, or susceptible of correction—which the Plaintiff absolutely denies for the reasons set forth in the various counts of the complaint—MERS simply had no interest to assign regardless of the role it played. The harsh reality is that OneWest took nothing.

OneWest has further violated M. G. L. c. 183, § 21 **by failing to first comply with the terms of the mortgage contract** before exercising the power of sale—that is to say, while the Defendants make much ado about the **Plaintiff's** breach (to which they have arguably made a substantial contribution by failing to honor a modification while the loan was still current) they have wholly ignored **their own**. The terms that have been breached and the manner in which they have been breached are stated with particularity in the complaint and are for the sake of brevity incorporated herein by reference.[44]

However, the law in this regard is that a mortgage is a contract[45]—a contract containing certain terms **the Plaintiff** now wishes to enforce as against the Defendants; in point of fact, she has a **contractual obligation** to do so.[46] The language of the mortgage contract is clear and unambiguous with regard to the terms the defendants have breached, and there are no issues (capacity, illegality of purpose, and so forth) that would allow this Court to substitute in their place a contrary meaning or judgment.[47]

---

[44] Compl. ¶¶ 80-81.

[45] U.S. Bank National Association v. Ibanez, 17 LCR 679, MISC 08-384283, n. 21 (2009) (Memorandum and Order on the Plaintiffs' Motions to Vacate Judgment), aff'd 458 Mass. 637 (2011).

[46] ". . . Borrower warrants and **will defend generally the title to the Property against all claims and demands**, subject to any encumbrances of record [emphasis added]." The assignment to OneWest is a claim of title.

[47] Beacon Hill Civic Assn. v. Ristorante Toscano, Inc., 422 Mass. 318, 320 (1996) (citations omitted) ("freedom of contract is the general rule of our law" and "rests on the premise that it is in the

One point that should be mentioned in this regard is this: the Defendants go to some length to refute the Plaintiff's purported assertion that Massachusetts law requires the mortgage to remain with the note. ***The Plaintiff has never made such a claim*** and to do so would be contrary to existing law; rather her claim is that ***the mortgage contract, by its plain language, itself requires that the two interests remain together.***[48] The real question here is why are the Defendants ignoring the fact? After all, it is ***their*** adhesion contract. The Court cannot countenance a double standard that allows the defendants to enforce provisions of the contract that work to their advantage and to simply brush-off the rest.

Finally, OneWest has further violated M. G. L. c. 183, § 21 by ***failing to comply with the statutes relating to the foreclosure of mortgages by the exercise of a power of sale.*** The statutes in question and the reasons for their violation are again stated with

---

public interest to accord individuals broad powers to order their affairs through legally enforceable agreements."). See also Robbins v. Krock, 73 Mass. App. Ct. 134, 138-139 (2008); TAL Financial Corp. v. CSC Consulting, Inc., 446 Mass. 422, 430 (2006); 73 Mass. App. Ct. at138-139 ("under freedom of contract principles, generally, parties are held to the express terms of their contract."); Rogaris v. Albert, 431 Mass. 833, 835 (2000) (when interpreting a written contract, "the court gives full effect to all the terms expressed by the parties. The terms stated by the parties will be taken in their plain and ordinary sense unless otherwise indicated by the contract. It is not the role of the court to alter the parties' agreement." (citations omitted, emphasis added). See also 73 Mass. App. Ct. at 138-139; Fried v. Fried, 5 Mass. App. Ct. 660 , 664 (1977), citing Stop & Shop, Inc. v. Ganem, 347 Mass. 697, 701 (1964) (when interpreting a written agreement, the courts are guided by "[j]ustice, common sense and the probable intent of the parties."); 73 Mass. App. Ct. at138-139; Polito v. School committee of Peabody, 69 Mass. App. Ct. 393, 396 (2007) (a court "must interpret the words in a contract according to their plain meaning.") citing Dickson v. Riverside Iron Works, Inc., 6 Mass. App. Ct. 53 , 55 (1978); Richard Clothing Mfg. Co. v. Gutstein-Tuck, Inc., 328 Mass. 386, 389 (1952) (a contract "must be construed as a whole, giving to the words their natural and usual meaning in the light of the circumstances in which they were employed in order to ascertain the intention of the parties"); 11 Williston, Contracts § 32:5 (4th ed. 1999); 73 Mass. App. Ct. at138-139.

[48] The Defendants cannot have it both ways and have painted themselves into a corner. If, as they argue, MERS is the actual mortgagee, then, given that the note must change hands a number of times during the securitization process, the mortgage and the note were necessarily separated—resulting in a breach of the mortgage contract. On the other hand, if, as the Plaintiff argues, MERS is only a nominee, then anyone it was representing at the time the assignment was made did not, absent a chain of written assignments, own the mortgage. Either way, ownership of the mortgage never passed to OneWest.

particularity in the complaint and are incorporated by reference herein.[49]  The failure to comply with any statute pertaining to foreclosure by power of sale is a violation of M. G. L. c. 183, § 21 and renders the foreclosure void.[50]

## 2.  Chapter 183, § 54B of the Massachusetts General Laws must be harmonized with other statutes pertaining to foreclosure by exercise of the power of sale or it must be declared unconstitutional as applied in the present case.

With regard to the assignment in the present case—the mere act of "purporting" to sign on behalf of the mortgage holder, though permitted by M.G.L. c. 183, § 54B ("Section 54B"), does not and cannot in itself establish conclusively that the person on whose behalf the signor is "purporting" to sign is in fact the holder of the mortgage. Therefore, to construe Section 54B so as to scrap the need for a threshold determination of whether or not the "mortgage holder" (on whose behalf the signor of the assignment is purporting to sign) is in fact the holder of the mortgage is to allow the statute to serve as both a conduit for fraud and a "title laundering" device.

The better view is that Section 54B must be harmonized with M.G.L. c. 183, § 21, M. G. L. c. 244, § 14 and other statutes relating to foreclosure by exercise of the power of sale lest it be unconstitutional as applied for effecting a deprivation of the mortgagor's right to substantive and procedural due process—specifically the right to be heard with regard to the integrity and propriety of the assignment.  If the assignor of a mortgage assignment is not in fact the holder of the mortgage, the assignment must be deemed a nullity even though the person signing and acknowledging the assignment need only purport to be doing so on behalf of the actual holder and need not show authority to do so.

---

[49] Compl. ¶¶ 82-85.
[50] Ibanez, 458 Mass. at 646-647.

This is one of the few points susceptible to challenge in Judge Young's analysis of MERS in <u>Culhane</u>—and it is one pulled completely from its context by the Defendants in the present case in an effort to obscure material defects in the assignment to OneWest. Judge Young in fact said:

> This Court is deeply troubled that, with little to no oversight, individuals without any tie to or knowledge of the company on whose behalf they are acting may assign mortgages — that is, they may transfer legal title to someone else's home. . . . Equally troubling is the conflict of interest posed by these certifying officers wearing "two hats" simultaneously: that of assignor (as agent for MERS) and assignee (as employee of the note holder or its servicing agent). . . . Indeed, a MERS certifying officer is more akin to an Admiral in the Georgia navy or a Kentucky Colonel with benefits than he is to any genuine financial officer. In its rush to cash in on the sale of mortgage-backed securities, the MERS system supplies the thinnest possible veneer of formality and legality to the wholesale marketing of home mortgages to large institutional investors [citations omitted].

Clearly these are not words of approbation, but Judge Young nonetheless felt constrained by the language of Section 54B:

> But what of it? . . . That they hold themselves out as officers of MERS, the "entity holding [the] mortgage," is all that the statute requires with respect to a signer's authority.

The missing element here is that MERS does not itself hold the mortgage, and that knowing the identity of the person for whom it *is* held is critical, lest the statute serve to vitiate the cardinal requirement of M. G. L. c. 183, § 21 that only the holder of the mortgage may foreclose by exercising the power of sale.[51]

---

[51] The maxim that "seemingly contradictory provisions of a statute must be harmonized so that the enactment as a whole can effectuate the presumed intent of the Legislature" should apply as well to contradictory statutes that bear upon foreclosure by exercise of the power of sale. There is no question that, as in <u>Culhane,</u> when Section 54B allows to pass unnoticed the fact that the person on whose behalf the signor "purports" to sign does not own the mortgage, it conflicts with Section 21, M. G. L. c. 244, § 14 and other statutory provisions pertaining to foreclosure by power of sale. Since, as between Section 21 and Section 54B, Section 21is the more specific with regard to exercise of the power of sale, it should not be enervated by too narrow a reading of Section 54B. See <u>Commonwealth v. Harris, 443 Mass. 714, 725-726</u> ( 2005) ("As we attempt to harmonize these statutes, it is not for us to determine which of them is more weighty or worthwhile and to allow that statute to dominate. [ ] Instead, we must seek to apply them in a manner that, to the greatest extent possible, serves the policies underlying both.").

## IV.  Conclusion

For the reasons set forth above, the Plaintiff respectfully asks that this honorable

Court DENY the Defendants' motion to dismiss and allow her to advance her case.

> Respectfully submitted,
> RHONDA MILLS,
> By her attorneys:
>
>
> /s/Rockwell P. Ludden
> Rockwell P. Ludden, BBO No. 549478
> rpl@luddenkramerlaw.com
> Colleen H. Kramer, BBO No. 552107
> chk@Luddenkramerlaw.com
> LuddenKramerLaw, P.C.
> Post Office Box 251
> Yarmouthport, Massachusetts 02675
> Tel:  (508) 398-8301
> Fax: (508) 694-6625

Dated:  August 10, 2012

## CERTIFICATE OF SERVICE

I hereby certify that on August 10, 2012 this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to all non-registered participants on this day as well.

> /s/ Rockwell P. Ludden_____

## CERTIFICATE OF COMPLIANCE WITH STANDING ORDER

In accordance with the Court's Standing Order issued January 10, 2008 with regard to dispositive motions and oppositions thereto before Judge Tauro, the Plaintiff will within three days of the date set forth above deliver a courtesy copy of this opposition and memorandum of reasons to the Office of the Clerk.

> /s/ Rockwell P. Ludden_____