UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| RHONDA G. MILLS, | |
|---|---|
| Plaintiff, | |
| v. | CASE NO.: 1:12-cv-10937-JLT |
| U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE FOR THE LEHMAN XS TRUST, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-4N, et al. | |
| Defendants. | |

## PLAINTIFF'S RULE 5.1 NOTICE OF CONSTITUTIONAL CHALLENGE

Pursuant to Rule 5.1 of the Federal Rules of Civil Procedure, the Plaintiff, RHONDA G. MILLS, hereby gives notice of her intent to challenge the constitutionality of Massachusetts General Laws, c. 183, § 54B under the Declaration of Rights to the Massachusetts Constitution. This challenge was raised initially in her *Verified Amended Complaint*,[1] again in her *Opposition to Defendants' Motion to Dismiss*,[2] and has been further warranted by the subsequent *Defendants' Reply in Further support of Motion to Dismiss*.[3] The parties to this action do not include the state, one of its agencies, or one of its officers or employees in an official capacity.

---

[1] Verified Amended Complaint at 39, ¶ 141.
[2] Plaintiff's Opposition to Defendants' Motion to Dismiss at 19-20.
[3] Defendants' Reply in Further support of Motion to Dismiss at 7-8.

## THE CONSTITUTIONAL QUESTION IN SUMMARY FORM

1. Does M.G.L. c. 183, §54B violate the guarantees of substantive due process, procedural due process, equal protection, and the separation of powers found in arts. 1, 10, 11, and 30 of the Declaration of Rights to the Massachusetts Constitution when it is applied in such a way as to:

(a) Nullify and in effect repeal the substantive requirement under M.G.L. c. 183, § 21 and M.G.L. c. 244, § 14 that a person exercising the statutory power of sale be the actual holder of the mortgage; and,

(b) Nullify the cardinal rule of statutory construction that statutes dealing with the same subject matter be harmonized with one another; and,

(c) Serve as a device by which to "launder" a fraudulent or otherwise materially defective transfer by allowing an assignment of mortgage to be deemed valid even when the assignor has no interest whatsoever in the mortgage; and,

(d) Deny the mortgagor any meaningful opportunity to challenge the authority of the person exercising the power of sale to do so?

2. If M.G.L. c. 183, § 54B produces the results set forth in ¶¶ (a) through (d) above, not by its application but because it was the intent of the Legislature to do so, is it facially unconstitutional?

## THE CONSTITUTIONAL QUESTION EXPLAINED

The Plaintiff in this case alleges that as a matter of law, neither MERS nor anyone it may have represented when it made the assignment to OneWest held her mortgage and that the assignment was therefore a nullity.[4] The Defendants, on the other hand, urge this Court to follow the reasoning of Culhane v. Aurora Loan Services of Nebraska, 826 F.

---

[4] The reasons for this are set forth in some detail in the Verified Amended Complaint as well as in the Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss. Salient but not alone among them is the fact that there are no assignments in the present case save for the one from MERS, individually, to OneWest, and that ownership of a mortgage interest is not transferred from one person to the next during the securitization process merely because they have all chosen to use MERS as their common agent—that is to say, that an agent cannot transfer ownership of an interest in land to which the principal itself has no claim. The Defendants can point to no authority, state or federal, that has squarely addressed or ruled on this exact issue—which is a very particular and specific challenge to a MERS assignment presented by the Plaintiff in the present case. Despite the Defendants' unsupported claim to the contrary, it is a matter of first impression before this Court.

Supp. 2d 352 (D. Mass. Nov. 28, 2011) (appeal pending on this and other issues), in which M.G.L. c. 183, § 54B ("Section 54B") was read to mean that so long as the person who signs and acknowledges an assignment of mortgage "purports" to do so on behalf of the mortgage holder, the assignment is valid under Massachusetts law—*that there is, in other words, no need for a threshold determination as to whether or not the person on whose behalf the assignment is made is in fact the holder of the mortgage*.[5]

This not only reduces Section 54B to a device by which an unscrupulous servicer may, as in the present case, "launder" a fraudulent or otherwise materially defective transfer, it also nullifies and indeed makes complete nonsense of the requirement that only the holder of the mortgage may exercise the power of sale—a requirement clearly set forth in M.G.L. c. 183 § 21 and M.G.L. c. 244, § 14, both of which are remedial in nature and intended by the Legislature to protect the rights of the homeowner against unlawful foreclosure.[6]

It bears repeating that *there is absolutely no way to square the interpretation of Section 54B urged by the Defendants with the statutes of this Commonwealth that were specifically created to govern foreclosure by power of sale and to protect the rights of homeowners.* Moreover, such an interpretation would effectively take the mischief that has occurred and place it beyond the reach of homeowner and judge alike. The constitutional ramifications to this are as follows:

---

[5] The Culhane Court had difficulty with this but felt constrained by its interpretation of Section 54B: "As the MERS system demonstrates, even **strict compliance with the statutory terms does nothing to ensure that real property is not conveyed fraudulently.**" For this and other reasons, Culhane is presently on appeal before the U.S. Court of Appeals for the First Circuit.

[6] See U.S. Bank National Assn. v. Ibanez, 17 LCR 202. (2009) aff'd 458 Mass 637 (2011).

## IMPLICATED PROVISIONS IN THE DECLARATION OF RIGHTS

### (a) Substantive Due Process, Mass. Const. Pt. I, arts. 10, 11.

Mills asserts that the possession and enjoyment of her home is a fundamental right deeply rooted in this Nation's history and tradition[7] and so implicit in the concept of ordered liberty that "neither liberty nor justice would exist if they were sacrificed."[8] The reading of Section 54B urged by the Defendants would be fundamentally unfair as it would unjustifiably burden Mills's fundamental right to be protected in the enjoyment of her property pursuant to Mass. Const. Pt. I, art. X[9] by allowing a foreclose by power of sale to be based on assignment where the assignor had no enforceable interest in the mortgage assigned and the assignor was in fact using the statute as a license to commit fraud.

As there is no legitimate and compelling governmental interest in such a result, the reading of Section 54B urged by the Defendants should be reviewed and disallowed by a standard of strict scrutiny. See Gillespie v. City of Northampton, 460 Mass. 148, 153 (2011), citing Goodridge v. Department of Public Health, 440 Mass. 309, 330 (2003). Alternatively, even if this Court were to find the property interest in question less than "fundamental" under the Constitutional law of Massachusetts it would strain the bounds

---

[7] Gillespie, 460 Mass. at 153, citing Moore v. East Cleveland, 431 U.S. 494, 503 (1977) (plurality opinion).

[8] Id., citing Washington v. Glucksberg, 521 U.S. 702, 720-721 (1997), quoting Palko v. Connecticut, 302 U.S. 319, 325, 326 (1937).

[9] Article X: "Each individual of the society has a right to be protected by it in the enjoyment of his life, liberty and property . . ."

A question posed by Mills is this: does a Federal Court have the authority *to apply* Section 54B, a Massachusetts statute, in such a manner as to abridge and effectively repeal, in part, art. X of the Declaration of Rights to the Massachusetts Constitution by depriving her of an opportunity to be heard in a meaningful way on an issue critical to her case—this in violation of her rights under M. G. L. c. 183, § 21 and M. G. L. c. 244, § 14. The people of Massachusetts have never consented to such an abridgment or repeal, nor is there any Federal law that would mandate intrusion into an area that is so clearly a matter of state concern.

of credulity to posit that the application of Section 54B in such a manner as to legitimate a fraudulent or otherwise materially defective transfer is in any sense rational or reasonably related to the furtherance of a valid State interest under a "rational basis" level of scrutiny. Id.

**(b) Procedural due process.**

Procedural due process under the Massachusetts Constitution requires that a statute or governmental action that has survived substantive due process scrutiny be implemented in a fair (and thus impartial) manner. Mass. Const. Pt. 1, art XI;[10] Gillespie, 460 Mass. at 156, citing Aime v. Commonwealth, 414 Mass. 667, 674 (1993); Mathews v. Eldridge, supra; Matter of Angela, 445 Mass. 55, 62 (2005), quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965). Clearly, the exercise of the statutory power of sale by a person without right is "an erroneous deprivation through the procedure used"—which in this case would be an outright denial of Mills's right to expose the fact that the assignor did not have an enforceable interest in the mortgage.

**(c) Equal Protection.**

In Section 54B, the Massachusetts Legislature has engaged in classification. The class in question here, whether by design or necessity, is that of persons whose mortgages are assigned by the actual holder of the mortgage or on behalf of the actual holder of the mortgage. There is nothing facially improper about this classification since it pertains to

---

[10] Article XI: Article XI. Every subject of the commonwealth ought to find a certain remedy, by having recourse to the laws, for all injuries or wrongs which he may receive in his person, property, or character. He ought to obtain right and justice freely, and without being obliged to purchase it; completely, and without any denial; promptly, and without delay; conformably to the laws.

the statutory purpose of streamlining, among other things, the process by which a mortgage is assigned.

However, the application of Section 54B urged by the Defendants would result in the placing of Mills into that class despite the fact that she is **not similarly situated** to others in the class. The reason for this is simply that the foreclosure of her mortgage was based entirely on an assignment made by someone who had no enforceable interest in the mortgage and therefore had nothing to assign. The inclusion of Mills in that class would therefore render the statute **over-inclusive**, deprive her of a right that is unavailable to those who are properly within the class,[11] and contravene her right to equal protection under Mass. Const. Pt. I art. I as amended.[12] See Murphy v. Commissioner of the Dept't of Indus. Accs., 415 Mass. 218, 226-227 (1993); Cleburne v. Cleburne Living Ctr., Inc. 473 U.S. 432, 440 (1985) as cited in Gillespie, 460 Mass. at 158-159. Thus the classification would be "arbitrary and irrational." Pinnick v. Cleary, 360 Mass. 1, 28. (1971), cited in Gillespie, 460 Mass. at 159.

### (d) De facto repeal as an act of legislation.

Because the reading of Section 54B urged by the Defendants *effectively repeals* the core requirements of M. G. L. c. 183, § 21 and M. G. L. c. 244, § 14 that only the real

---

[11] That is to say, the right to challenge the assignor's ownership of the mortgage interest.

[12] Article I: "All people are born free and equal and have certain natural, essential and unalienable rights; among which may be reckoned the right of enjoying and defending their lives and liberties; ***that of acquiring, possessing and protecting property***; in fine, that of seeking and obtaining their safety and happiness. . . ."

mortgagor may exercise the power of sale, it essentially asks the Court to commit an act of legislation in violation of Mass. Const. Pt. I, art XXX.[13]

## UNCONSTITUTIONALITY—FACIAL OR BY APPLICATION?

There is good reason to posit that the constitutional violations described above would result from the *application* of Section 54B, not its facial composition or design, though obviously some clarification by the Supreme Judicial Court is in order if the statute is to be struck down at least in part.

First, there is nothing in the language of the statute that would prevent a threshold determination that the person on whose behalf a mortgage is assigned is in fact the holder of the mortgage—and much to suggest that such a determination is in fact required. Section 54B, as amended retroactively [14] by St. 2010, c. 282, § 2, states:

> Notwithstanding any law to the contrary, (1) a discharge of mortgage; (2) a release, partial release or assignment of mortgage; (3) an instrument of subordination, non-disturbance, recognition, or attornment by the holder of a mortgage; (4) any instrument for the purpose of foreclosing a mortgage and conveying the title resulting therefrom, including but not limited to notices, deeds, affidavits, certificates, votes, assignments of bids, confirmatory instruments and agreements of sale; or (5) a power of attorney given for that purpose or for the purpose of servicing a mortgage, and in either case, any instrument executed by the attorney-in-fact pursuant to such power, if executed before a notary public, justice of the peace or other officer entitled by law to acknowledge instruments, whether executed within or without the commonwealth, by a person purporting to hold the position of president, vice president, treasurer, clerk, secretary, cashier, loan representative, principal, investment, mortgage or other officer, agent, asset manager, or other similar office or position, including assistant to any such office or position, of ***the entity holding such mortgage***, or otherwise purporting to be an authorized signatory ***for such entity***, or acting under such power of attorney ***on behalf of such entity***, acting in its own capacity or as a general partner or co-venturer of ***the entity holding such mortgage***, shall be binding ***upon such entity***

---

[13] Article XXX: "In the government of this commonwealth . . . the judicial shall never exercise the legislative and executive powers, or either of them: to the end it may be a government of laws and not of men."

[14] SECTION 7. This act shall apply to mortgages and other documents or instruments referred to herein, whether recorded *before, on or after the effective date of this act* [emphasis added].

and shall be entitled to be recorded, and no vote of *the entity affirming such authority* shall be required to permit recording [emphasis added].

It is clear from the plain language of Section 54B that a person signing and acknowledging an assignment of mortgage[15] in a representative capacity[16] need only "purport" to do so on behalf of the mortgage holder, and that there need not be any affirmation of his authority to do so by the mortgage holder.[17] ***But equally clear from the highlighted language in the paragraph quoted above and yet woefully overlooked is this: that the mortgage holder on whose behalf that person is signing and acknowledging the assignment must in fact be the mortgage holder***—that is, the owner of the legal title to the secured property. Although the person signing and acknowledging need only "purport" to do so on behalf of the mortgage holder, there is nothing to suggest that the ***mortgage holder*** need only "purport" to be the mortgage holder. ***The application of Section 54B urged by the Defendants would allow the person signing and acknowledging the assignment to do so on behalf of virtually anyone.***

---

[15] Which, in the present case, would also be an "instrument for the purpose of foreclosing a mortgage and conveying the title resulting therefrom."

[16] It is fair to say that Section 54B represents a striking expansion of previous law which typically required the transfer of a corporate interest in land to be made only by the president, vice-president, and treasurer or assistant treasurer of the corporation. See M. G. L. c. 156D, 8.46 (added by St. 2003, c 127, § 17 and effective July 1, 2004) ("Any recordable instrument purporting to affect an interest in real estate, executed in the name of a corporation by the president or a vice president and the treasurer or an assistant treasurer, who may be one and the same person, shall be binding on the corporation . . . "); M.G.L. c. 156B, §115 and M.G.L. c. 155, § 8 say essentially the same thing, with the latter extending the limitation to foreign and certain other corporations. Since Section 54B is more recent and relates more specifically to assignments of mortgage one would assume, under established rules of statutory construction, that it would control in the present context.

[17] This provision seems in accordance with statutes cited in the previous footnote. See M. G. L. c. 156B, §115 ("Any recordable instrument purporting to affect an interest in real estate, executed in the name of a corporation by the president or a vice president and the treasurer or an assistant treasurer, who may be one and the same person, shall be binding on the corporation in favor of a purchaser or other person relying in good faith on such instrument ***notwithstanding inconsistent provisions of the articles of organization, certificate of incorporation, charter, special act of incorporation, constitution, by-laws, resolutions or votes of the corporation*** [emphasis added]").

Again, there are numerous references in the statute to "the entity holding the mortgage." Where the language of a statute is clear and unambiguous it must be given its ordinary meaning. Rate Setting Commission v. Faulkner Hospital, 411 Mass. 701, 705, n. 8. (1992), citing Hashimi v. Kalil, 388 Mass. 607, 610 (1983). The term "entity holding such mortgage" cannot be ignored. In Global Naps, Inc., v. Awiszus, 457 Mass. 489 (2010) Justice Botsford stated:

> It is a cardinal rule of statutory construction, however, that no provision in a statute "is to be regarded as superfluous, but each is to be given its ordinary meaning without overemphasizing its effect upon the other terms appearing in the statute, so that the enactment considered as a whole shall constitute a consistent and harmonious statutory provision capable of effectuating the presumed intention of the Legislature." Commonwealth v. Woods Hole, Martha's Vineyard & Nantucket S.S. Auth., 352 Mass. 617, 618 (1967), quoting Bolster v. Commissioner of Corps. & Taxation, 319 Mass. 81, 84-85 (1946).

457 Mass. at 505 (Botsford, J., concurring in part and dissenting in part, with whom Gants, J., joins; and with whom Marshall, C.J., joins in relevant part)[18] It is further settled that, "in construing a statute, its words must be given their plain and ordinary meaning according to the approved usage of language . . . and that the language of the statute is not to be enlarged or limited by construction unless its object and plain meaning require it." William McCarty's Case, 445 Mass. 361, 364 (2005), quoting Taylor's Case, 44 Mass. App. Ct. 495, 499 (1998), quoting Johnson's Case, 318 Mass. 741, 746-747 (1945). "When the use of the ordinary meaning of a term yields a workable result, there is no need to resort to extrinsic aids such as legislative history." Rate Setting Commission, supra, at 705; Bronstein v. Prudential Ins. Co., 390 Mass. 701, 704 (1984).

---

[18] See also Ropes & Gray LLP v. Jalbert, 454 Mass. 407, 412 (2009) ("A statute should be construed so as to give effect to each word, and no word shall be regarded as surplusage."); Wolfe v. Gormally, 440 Mass. 699, 704 (2004); Bankers Life & Cas. Co. v. Commissioner of Ins., 427 Mass. 136, 140 (1998).

See Fordyce v. Town of Hanover, 457 Mass. 248, 257-258 (2010) ( "[W]here the meaning of a single word in a statute is at issue, we generally infer that the Legislature intended the word be interpreted in accordance with its "ordinary and approved usage." Suffolk Constr. Co. v. Division of Capital Asset Mgt., 449 Mass. 444, 454 (2007). Moreover, "where a statute employs a word with an established meaning in the common law, we consider the statute in light of that meaning, and we do not construe the statute as 'effecting a material change in or repeal of the common law unless the intent to do so is clearly expressed.'" 457 Mass. at 258, quoting Suffolk, supra, quoting Riley v. Davison Constr. Co., 381 Mass. 432 , 438 (1980). See Busalacchi v. McCabe, 71 Mass. App. Ct. 493 , 497 (2008) ("Without a clear expression from the Legislature breaking with the common law, the common law will apply"). See also M. G. L. c. 4, § 6, ¶ 3.

Second, as previously explained, to place beyond judicial inquiry the question of whether or not the assignor in fact owns the mortgage is to completely enervate and by implication ***repeal*** M.G.L. c. 183, § 21 and M.G.L. c. 244, §14 to the extent that they require the power of sale to be carried out by the current holder of the mortgage. This too is an impermissible result—as the Supreme Judicial Court has made clear through a long and well-established body of case law dealing with statutory construction—particularly the requirement that statutes touching upon the same subject matter be construed in such a manner as to establish ***a harmonious whole.*** It bears noting in this regard that "only one Massachusetts court, the Supreme Judicial Court, may definitively prescribe binding rules of decision on matters of Massachusetts law." Vertex Surgical Inc. v. Paradigm Biodevices, Inc., 648 F.Supp. 2d 226, 231, n. 2 (D. Mass. 2009) (Woodlock, J.).

For one, the Supreme Judicial Court assumes that the Legislature, when passing a law, is aware of any existing statutes relating to the same subject,[19] and that a statute must therefore be interpreted so as to harmonize with prior enactments and give rise to "a consistent body of law." [20] Section 54B could, for example, easily be harmonized with Section 21 simply by applying the two statutes in juxtaposition to one another and requiring a threshold determination that the assignor is in fact the owner of the mortgage interest.

For another, the Court has ruled that it "will find an implied repeal of one statute by another only when 'the prior statute is so repugnant to, and inconsistent with, the later enactment that both cannot stand,'" [21] And further, a "statute is not to be deemed to repeal or supersede a prior statute in whole or in part in the absence of express words to that effect or of clear implication." [22] Therefore, "where the repealing effect of a statute is doubtful, the statute is strictly construed to effectuate its *consistent* operation with previous legislation."[23] The reason for this is that "[i]t is not to be lightly supposed that radical changes in the law were intended where not plainly expressed." [24]

---

[19] Thurdin v. SEI Boston, LLC., 452 Mass. 436, 467-68 (2008) citing Charland v. Muzi Motors, Inc., 417 Mass. 580 , 582 (1994), quoting Mathewson v. Contributory Retirement Appeal Bd., 335 Mass. 610, 614 (1957); see, also Green v. Wyman-Gordon Co., 422 Mass. 551, 554 (1996) (court assumes Legislature aware of existing statutes when it enacts subsequent ones).

[20] Thurdin v. SEI Boston, LLC., supra at 457, citing Charland v. Muzi Motors, Inc., supra at 583 (court is bound, where possible, to interpret statute "in harmony with prior enactments to give rise to a consistent body of law," and that the Legislature is "presumed to understand and intend all consequences" of its acts.) quoting Hadley v. Amherst, 372 Mass. 46, 51 (1977), and Boston Water & Sewer Comm'n v. Metropolitan Dist. Comm'n, 408 Mass. 572 , 578 (1990)..

[21] Thurdin v. SEI Boston, LLC., supra at 457, citing Boston v. Board of Educ., 392 Mass. 788, 792 (1984), quoting Commonwealth v. Graham, 388 Mass. 115, 125 (1983).

[22] Commonwealth v. Hayes, 372 Mass. 505, 512 (1977), quoting Colt v. Fradkin, 361 Mass. 447, 449-450 (1972).

[23] Commonwealth v. Hayes, supra, quoting 1A C. Sands, Sutherland Statutory Construction § 23.10 (4th ed. 1972) [emphasis in original].

[24] Commonwealth v. Burke, 390 Mass. 480 , 486 (1983), quoting Ferullo's Case, 331 Mass. 635, 637 (1954). See School Comm. of Newton v. Newton Sch. Custodians Ass'n, Local 454, 438 Mass. 739,

There is no basis whatsoever on which to place an assumption that the Legislature intended by its enactment of Section 54B to repeal, directly or by implication, in whole or in part, any prior statute pertaining to foreclosure by exercise of the power of sale. Certainly no contrary view was expressed in Culhane, upon which the Defendants place considerable reliance in the present case.[25]

And finally, but not least, "general statutory language must yield to that which is more specific."[26] M.G.L. c. 183, § 21 and M.G.L. c. 244, § 14 pertain specifically to foreclosure by exercise of the power of sale; Section 54B does not but deals instead with transfers of interest during the ordinary course of business. Section 54B assumes that the assignor owns the mortgage and defines the propriety of the assignment based on that assumption. It is therefore not the yardstick by which to measure whether or not the assignor does in fact own the mortgage—let alone prevent the question from being raised.[27]

The upshot of all of this is that Section 54B can and by all rights ***must*** be harmonized with M.G.L. c. 183, § 21 and M.G.L. c. 244, § 14 simply by making a

---

751 (2003) ("In the absence of explicit legislative commands to the contrary, we construe statutes to harmonize and not to undercut each other.").

[25] Although Judge Young acknowledges the requirement under M.G.L. c. 183, § 21 that the power of sale can only be exercised by one holding the mortgage, he does not, in his opinion, reconcile this with his interpretation of M.G.L. c. 183, § 54B. Although his analysis of § 54B centers around the MERS "certifying officer" it overlooks the fact that if the assignor (whose identity is unknown) did not own the mortgage it really doesn't matter who signed and acknowledged the assignment; it is worthless to begin with.

[26] TBI, Inc. v. Board of Health of N. Andover, 431 Mass. 9, 18 (2000), quoting Risk Mgt. Found. of Harvard Med. Insts., Inc. v. Commissioner of Ins., 407 Mass. 498, 505 (1990).

[27] Since, as between Section 21 and Section 54B, Section 21 is the more specific with regard to exercise of the power of sale, it should not be enervated by too narrow a reading of Section 54B. See Commonwealth v. Harris, 443 Mass. 714, 725-726 ( 2005) ("As we attempt to harmonize these statutes, it is not for us to determine which of them is more weighty or worthwhile and to allow that statute to dominate. [ ] Instead, we must seek to apply them in a manner that, to the greatest extent possible, serves the policies underlying both."). Section 54B deals expressly with transfers, not the power of sale and should not impact negatively on Section 21

threshold determination that the assignor does in fact hold the mortgage—a threshold determination that is already a condition precedent to exercise of the power of sale under M.G.L. c. 183, § 21 and M.G.L. c. 244, § 14, and **the burden of proof for which has been clearly placed on the foreclosing entity by the Supreme Judicial Court in <u>Ibanez and its progeny</u>.** If the mortgage industry is acting in good faith, how difficult could this be? The proposition that Section 54B can be used as an outright bar to such a determination cannot be allowed to stand.

## CONCLUSION

There are ways in which Section 54B might be applied without insult to the Declaration of Rights. However, **were we to accept as correct the interpretation of Section 54B urged by the Defendants, the violations previously described would be realized and Section 54B would be unconstitutional on its face.** Section 54B cannot, whether by application or design, be allowed to insulate from judicial inquiry the fact of a fraudulent or otherwise materially defective assignment.

                Respectfully submitted,
                RHONDA MILLS,
                By her attorneys:


                /s/Rockwell P. Ludden
                Rockwell P. Ludden, BBO No. 549478
                rpl@luddenkramerlaw.com
                Colleen H. Kramer, BBO No. 552107
                chk@Luddenkramerlaw.com
                LuddenKramerLaw, P.C.
                Post Office Box 251
                Yarmouthport, Massachusetts 02675
                Tel: (508) 398-8301
                Fax: (508) 694-6625

Dated: September 21, 2012

CERTIFICATE OF SERVICE

      I hereby certify that on September 21, 2012 this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to all non-registered participants on this day as well.

      /s/ Rockwell P. Ludden


CERTIFICATE OF COMPLIANCE WITH RULE 5.1

      I hereby certify that on September 21, 2012, I have, pursuant to Rule 5.1 of the Federal Rules of Civil Procedure, served a copy of this document by certified mail to the Office of the Attorney General, One Ashburton Place, Boston, MA 02108-1518.

      /s/ Rockwell P. Ludden