UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| RHONDA G. MILLS, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 12-10937-JLT |
| | * | |
| U.S. BANK NATIONAL ASSOCIATION | * | |
| AS TRUSTEE FOR THE LEHMAN XS | * | |
| TRUST, MORTGAGE PASS-THROUGH | * | |
| CERTIFICATES, SERIES 2007-N; | * | |
| ONEWEST BANK, F.S.B.; and | * | |
| MORTGAGE ELECTRONIC | * | |
| REGISTRATION SYSTEMS, INC., | * | |
| | * | |
| Defendants. | * | |

MEMORANDUM

April 3, 2013

TAURO, J.

I.   Introduction

Plaintiff Rhonda G. Mills initiated this suit after Defendant OneWest Bank, F.S.B. ("OneWest") foreclosed on her property. She brings twenty-three counts against Defendants U.S. Bank National Association as Trustee ("U.S. Bank"), OneWest, and Mortgage Electronic Registration Systems, Inc. ("MERS"), arguing that due to various defects, OneWest lacked authority to foreclose. Before the court are Defendants' motions to dismiss and Mills's motion to amend her complaint. For the reasons below, Defendants' Motions to Dismiss [#14, #21] are ALLOWED.[1] Mills's Motion to Amend Count 4 of the Complaint [#30] is DENIED.

---

[1] Defendants OneWest and U.S. Bank filed their Motion to Dismiss [#14] on July 27, 2012. On August 21, 2012, Defendant MERS filed a separate Motion to Dismiss [#21] that

II.   Factual Background[2]

Mills, a member of the Mashpee Wampanoag Tribe, owned property at 15 Emma Oakley Mills Way, Mashpee, Massachusetts.[3] After experiencing personal difficulties in 2006, she sought to refinance. On October 6, 2006, she executed an adjustable rate note to MortgageIT, Inc. ("MortgageIT") for $376,000.[4] That same day, she executed a mortgage to MERS on the Emma Oakley Mills Way property to secure the loan. MERS recorded the mortgage at the Barnstable Land Court Registry on October 12, 2006.[5] The mortgage identified MERS as the "mortgagee," "acting solely as a nominee for Lender and Lender's successors and assigns." The mortgage also indicated that, "The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower."[6]

In the spring of 2007, Mills realized that she could not keep up with her mortgage payments. She contacted her loan servicer, IndyMac Bank, F.S.B. ("IndyMac"), and in December 2008 IndyMac approved her loan modification application.[7] The loan modification incorporated delinquent payments from August 1, 2008, through February 1, 2009. IndyMac required Mills to

---

incorporated by reference the other defendants' entire motion. The court therefore addresses these motions together.

[2] The court presents the facts as alleged in the Verified Amended Complaint [#11] and in the light most favorable to Mills.

[3] V. Am. Compl. ¶¶ 1, 7 [#11].

[4] V. Am. Compl. ¶ 10.

[5] V. Am. Compl. ¶ 12.

[6] V. Am. Compl. Ex. 4, at 1, 11.

[7] V. Am. Compl. ¶¶ 13-14.

make her first payment under the modification on March 1, 2009. It also required Mills to sign, notarize, and return a modification agreement to IndyMac by January 12, 2009.[8] Mills indicates that she signed, notarized, and returned the agreement, although she does not specify that she complied with the stated deadline.[9] She does not allege that she made or attempted to make any of her delinquent payments or payments under the modification agreement. She does indicate that she found the modification terms "oppressive" and "stands ready, willing, and able to fulfill the terms of a loan modification that is reasonable, fair, and takes into consideration the realities of today's marketplace."[10] She claims that OneWest, IndyMac's successor-in-interest, failed to honor the modification. OneWest became the loan servicer on March 29, 2009.[11]

Both Mills's note and mortgage changed hands after she initially executed them. MortgageIT, the original holder of the note, subsequently sold the note on the secondary market, where it became part of the Lehman XS Trust, Mortgage Pass-Through Certificates, Series 2007-4N.[12] MERS assigned the mortgage to OneWest on April 23, 2009. OneWest recorded this assignment at the Barnstable Land Court Registry on May 6, 2009.[13]

On January 21, 2011, OneWest foreclosed Mills's mortgage. It sold her property at public

---

[8] V. Am. Compl. Ex. 5.

[9] V. Am. Compl. ¶ 14.

[10] V. Am. Compl. ¶¶ 14, 16.

[11] V. Am. Compl. ¶ 3; Defs.' Mem. Supp. Mot. to Dismiss ¶ 3 [#15].

[12] V. Am. Compl. ¶ 50.

[13] V. Am. Compl. ¶¶ 59-60.

auction to U.S. Bank.[14] Mills initiated this suit on May 23, 2012, challenging the foreclosure in Barnstable Superior Court. Defendants removed the case to this court on May 30, 2012.

III. Discussion

    A.    Legal Standard

To survive a motion to dismiss, "a complaint must allege 'a plausible entitlement to relief.'"[15] The court may consider only the facts alleged in the pleadings, documents attached as exhibits to the complaint, and matters subject to judicial notice.[16] It must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.[17]

Although the court construes the facts in the light most favorable to the plaintiff, it need not accept the plaintiff's legal conclusions as true.[18] The complaint must present more than "labels and conclusions or a formulaic recitation of the elements of a cause of action."[19]

    B.    Analysis of Defendants' Motions to Dismiss

Mills brings twenty-three assorted counts against Defendants regarding the foreclosure of her mortgage. Some of these fail to state recognized causes of action, and others are more appropriately characterized as requests for particular remedies. As Mills acknowledges in her

---

[14] V. Am. Compl. ¶ 74.

[15] Rodríguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007)).

[16] Nollet v. Justices of the Trial Court of Mass., 83 F. Supp. 2d 204, 208 (D. Mass. 2000), aff'd, 248 F.3d 1127 (1st. Cir. 2000).

[17] Langadinos v. Am. Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000).

[18] Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

[19] Id. (internal quotations and citations omitted).

opposition to the motions to dismiss, "The bedrock on which the Plaintiff's complaint rests is Count 1, which then elaborates itself into the remaining counts."[20] Because Count I, alleging failure to comply with the Massachusetts statutory power of sale, forms the basis of Mills's complaint, the court addresses it in detail. To the extent that any portions of Mills's claims survive this analysis, the court then addresses why these remaining claims fail to survive Defendants' Rule 12(b)(6) motion.

Mills alleges that OneWest lacked authority to foreclose using the statutory power of sale[21] because it did not possess a valid assignment of the mortgage or note. According to Mills, the fact that selling a mortgage on the secondary market requires multiple transfers of title means that title to her property changed hands multiple times before the MERS-OneWest assignment. She argues that these transactions cannot be ignored in considering the validity of the MERS-OneWest assignment simply because all prior transferees had used MERS as a common agent. On her theory, these prior transactions corrupted the chain of title to her property before the MERS-OneWest assignment even occurred, thereby rendering that assignment invalid.

Mills also challenges the validity of Mass. Gen. Laws ch. 183 § 54B, which allows an assignment to be recorded if executed before a notary public by one "purporting" to hold the position of, among others, president or vice president of the entity holding the mortgage. Mills claims that this statute violates the Massachusetts Declaration of Rights. Finally, Mills alleges that OneWest caused her default by failing to honor her loan modification, even though she acknowledges that she had defaulted on her loan at the time of foreclosure.

---

[20] Pl.'s Opp'n Defs.' Mot. to Dismiss 5 [#16].

[21] Mass. Gen. Laws ch. 183, § 21.

Mills's arguments must fail. The First Circuit recently addressed most of these contentions in <u>Culhane v. Aurora Loan Services of Nebraska</u>.[22] There, the court carefully examined the MERS registration system and concluded that it "fit[s] comfortably within the structure of Massachusetts mortgage law."[23] Here, as in <u>Culhane</u>, MERS could properly assign the mortgage.[24] Furthermore, the First Circuit rejected the argument, made here by Mills, that the mortgage instrument itself required transfer of the mortgage and note together. Examining identical language in the mortgage, the court concluded that, "[T]his language is permissive and by no means prohibits the separation of the two instruments."[25] Finally, the First Circuit considered, and rejected, similar challenges to Mass. Gen. Laws ch. 183, § 54B. "The Massachusetts statute neither places restrictions on who may be elected as an officer of the assignor nor imposes special requirements (say, regular employment) on who may serve as a vice president of an assignor corporation."[26] Section 54B cannot bear the weight that Mills seeks to put on it, and neither the MERS system nor the MERS-OneWest assignment provides a basis for challenging the foreclosure.

The court also rejects Mills's argument that OneWest caused her default. Under Massachusetts law, "after a mortgagor defaults in the performance of the underlying note, the mortgage holder may sell the property at a public auction."[27] "[A]bsent an explicit provision in the

---

[22] No. 12-1285, 2013 WL 563374 (1st Cir. Feb. 15, 2013).

[23] <u>Id.</u> at *7.

[24] <u>See</u> <u>U.S. Bank Nat'l Assoc. v. Ibanez</u>, 941 N.E.2d 40, 53 (Mass. 2011).

[25] <u>Culhane</u>, 2013 WL 563374, at *7 n.6.

[26] <u>Id.</u> at *8.

[27] <u>Ibanez</u>, 941 N.E.2d at 49.

mortgage contract, there is no duty to negotiate for loan modification once a mortgagor defaults."[28] Mills acknowledges that she was in default at the time of foreclosure, and her loan modification letter from IndyMac indicates that she had been delinquent some time prior to the modification. She has not plausibly alleged that OneWest caused her default at a time when it was not even the servicer of her loan or that she made or attempted to make any payments under the loan modification. For these reasons, Mills's challenges to OneWest's exercise of the statutory power of sale cannot survive Defendants' motions to dismiss.

In addition to dispensing with Count I, the foregoing analysis disposes of Counts II-XII and Counts XIV-XXIII, which all derive from Mills's allegations that OneWest improperly exercised the statutory power of sale. This leaves Count XIII, which alleges a violation of the Massachusetts Civil Rights Act ("MCRA").[29] To state a claim under the MCRA, Mills must show that: "(1) [her] exercise or enjoyment of rights secured by the Constitution or laws of either the United States or of the Commonwealth (2) has been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by 'threats, intimidation or coercion.' "[30] But Mills has not alleged any threats, intimidation, or coercion by any of Defendants. The fact that Mills's property held special significance to her Native American tribe,

---

[28] Peterson v. GMAC Mortg., LLC, No. 11-11115-RWZ, 2011 WL 5075613, at *6 (D. Mass. Oct. 25, 2011); see Carney v. Shawmut Bank, N.A., No. 07-P-858, 2008 WL 4266248, at *3 (Mass. App. Ct. Sept. 19, 2008) ("While [mortgage-holder] was free to negotiate with [mortgagor], it was under no obligation to do so, and was equally free to exercise the rights which it had acquired under the loan agreements.").

[29] Mass. Gen. Laws ch. 12, § 11*I*.

[30] Bally v. Ne. Univ., 532 N.E.2d 49, 51-52 (Mass. 1989) (quoting Mass. Gen. Laws ch. 12, § 11H).

and OneWest nevertheless foreclosed, does not in itself establish a violation of the MCRA. Mills's Count XIII fails along with the rest of her complaint.

   C. <u>Analysis of Mills's Motion to Amend</u>

Mills seeks to amend her complaint only to add an allegation that she sent a demand letter to Defendants pursuant to her claim under Massachusetts Chapter 93A. Because adding this allegation has no effect on the foregoing analysis of OneWest's authority to exercise the statutory power of sale, the court concludes that allowing amendment would be futile.[31]

IV. <u>Conclusion</u>

For these reasons, Defendants' <u>Motions to Dismiss</u> [#14, #21] are ALLOWED. Mills's <u>Motion to Amend Count IV of the Complaint</u> [#30] is DENIED.


AN ORDER HAS ISSUED. THIS CASE IS CLOSED.

                    /s/ Joseph L. Tauro
                    United States District Judge

---

[31] <u>Glassman v. Computervision Corp.</u>, 90 F.3d 617, 623 (1st Cir. 1996).